The STATE of Ohio

v.

LINNER.

Hamilton County Municipal Court.

No. C95CRB46751.

Decided Feb. 2, 1996.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *John M. Williams*, Assistant Prosecuting Attorney, for the plaintiff.

*Christopher T. Laber*, Hamilton County Assistant Public Defender, for the defendant.

---

TIMOTHY S. BLACK, Judge.

This criminal case came on for trial to the court on January 17, 1996 upon the state's charge that defendant Bernice Linner committed the crime of domestic violence in derogation of R.C. 2919.25(A) when she allegedly assaulted her live-in girlfriend, Vickie Birch, on December 24, 1995.

At trial, Birch identified the defendant as her lover, with whom she had been living together for thirteen months in an intimate, lesbian relationship. Per Birch's testimony, the defendant had asked Birch to marry her in March 1995, and they had three children between them, albeit patently from previous relationships. Ironically, the spark of the altercation at issue revolved around an expensive diamond ring which Birch was attempting to give to the defendant for Christmas. The defendant, in turn, rejected the ring as unnecessarily expensive, asserting, *inter alia*, that "we've got three kids [where we can better spend that much money]."

At trial, the evidence and testimony about the parties' physical altercation was extensive and upsetting. The state introduced a set of nine photographs of Birch taken on the night of the brawl, and they evidence a significant assault upon her, including a black eye, numerous bruises, cuts and scratches, several bruised squeeze marks on both arms, and a very badly bitten lip.

The defendant's explanation of the state's evidence sounded in self-defense, Linner testifying that she had acted only as "a calming influence." At six feet, two hundred sixty pounds, the defendant acknowledged her significant physical advantage over Birch.

At the close of trial, defense counsel timely moved for acquittal pursuant to Crim.R. 29(A), arguing that the state had failed to evidence that the victim was "a family or household member" statutorily entitled to the protection of Ohio's domestic violence laws. Defense counsel also argued for a finding of not guilty upon the evidence.

The court, desiring to consider the evidence over time, to research the applicable law, and to render a written decision addressing the legal argument for acquittal, continued this matter to today for decision. Bond was conditioned upon the defendant's having no contact with the prosecuting witness. Upon review, the court finds as follows.

The primary authority holding that "the [Ohio] domestic violence statute provide[s] protection to persons who are cohabiting regardless of their sex" is *State v. Hadinger* (1991), 61 Ohio App.3d 820, 823, 573 N.E.2d 1191, 1193. Therein, the court of appeals ruled that to hold otherwise "would eviscerate the efforts of the legislature to safeguard, regardless of gender, the rights of victims of domestic violence." *Id.*

Poised against *State v. Hadinger* is the October 25, 1994 written opinion of the Hamilton County Prosecuting Attorney delivered to the Presiding Judge of the Hamilton County Court of Common Pleas, Division of Domestic Relations, opining that R.C. 3113.31, Ohio's civil domestic violence statute, does not apply to persons of the same gender who are involved in intimate relationships.[1] In evaluating this opinion, the court is reminded that "it [the court] is not an ecclesiastical tribunal [empowered] to enforce moral standards uncodified by statute." *Taylor v. Taylor* (1983), 11 Ohio App.3d 279, 280, 11 OBR 459, 461, 465 N.E.2d 476, 477.

■ The better-reasoned analysis of the law reflects that Ohio's domestic violence laws apply equally to all persons regardless of their gender. Any person of either sex who can prove that he or she "otherwise is cohabiting" with another person of either sex as a "family or household member" is a person who is entitled to the protection of Ohio's domestic violence laws. This conclusion is required by the language of the domestic violence statutes, principles of statutory construction, the legislature's intent, and constitutional mandates.

Simply stated, Ohio's criminal domestic violence statutes prohibit any person from causing harm, or threatening to cause harm, to a "family or household member." R.C. 2919.25. A "family or household member" is defined at R.C. 2919.25(E) as follows:

"(E) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:

"(1) 'Family of household member' means any of the following:

"(a) Any of the following who is residing or has resided with the offender:

"(i) A spouse, a person living as a spouse, or a former spouse of the offender;

"(ii) A parent or a child of the offender, or another person related by consanguinity or affinity to the offender;

---

1. The statutory language of Ohio's civil domestic violence laws is virtually identical to that of Ohio's criminal domestic violence laws, and both must be applied in the same manner.

"(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender;

"(b) The natural parent of any child of whom the offender is the other natural parent.

"(2) 'Person living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within one year prior to the date of the alleged commission of the act in question."

Thus, the domestic violence statutes apply to and protect many persons other than those legally married, including parents, children, aunts, uncles, nephews, and nieces, as well as spouses, former spouses, and "persons living as spouses." Indeed, upon careful review, the statutory definitions do not require the person to be a spouse but merely to function like a spouse. Therefore, even if a person may not legally be a spouse, due to sex or current marital status, he or she is not precluded from proving that he or she is a person functioning like a spouse. Such a person is included within the statutory definition of a "person living as a spouse."

R.C. 2919.25(E)(2) does not exclude persons of the same sex from the definition of "person living as a spouse." In fact, R.C. 2919.25 does not utilize the terms "man" or "woman" or "husband" or "wife"; instead, the statute uses the gender-neutral words of "person" and "offender."

The legislature was fully aware that members of the same sex cohabit in the same manner as members of the opposite sex. If the legislature had intended to limit the application of the domestic violence statutes to people of opposite sexes, the legislature would have made specific reference to gender. See, *e.g.*, Cal.Penal Code 273.5 (prohibiting injury to "any person *of the opposite sex* with whom he or she is cohabiting"). (Emphasis added.)

Moreover, the rules of statutory construction require that every word in a statute is presumed to have some effect. *Ohio Water Serv. Co. v. Ressler* (1962), 173 Ohio St. 33, 38, 18 O.O.2d 243, 245, 180 N.E.2d 2, 6. If the legislature had intended that "person living as a spouse" would include only legally married persons, the legislature would not have added the "[or] otherwise is cohabiting" language in the statutory definition of "person living as a spouse."

Further, because "cohabiting" is not defined in Ohio's statutes, it must be read in context and according to common usage. *State v. Scott* (1982), 69 Ohio St.2d 439, 440, 23 O.O.3d 390, 391, 432 N.E.2d 798, 799; R.C. 1.42. Thus, "cohabiting"

has been defined in domestic relations case law in accordance with its common usage, to wit:

"The ordinary meaning of cohabitation is, of course, the act of living together. What constitutes living together is a question of fact in each particular case. * * * [C]ohabitation can be based entirely on acts of living together without sexual relations." *Sindel v. Sindel* (App.1975), 7 O.O.3d 223, 226.

As another Ohio court of appeals held:

"Cohabitation requires some regularity of functioning as would a husband and wife, either sexually or otherwise * * * [and] *usually* will be manifested by a man and woman living together in the same household and behaving as would a husband and wife, although there need not be an actual assertion of marriage." (Emphasis added.) *Fuller v. Fuller* (1983), 10 Ohio App.3d 253, 254, 10 OBR 366, 367–368, 461 N.E.2d 1348, 1349.

Thus, virtually all of the reported cases dealing with the issue of the meaning of "cohabiting" stress the importance of living together, discount the parties' legal status vis-a-vis marriage, and disavow heterosexual sexual relations as being the determinative consideration. *Taylor v. Taylor, supra,* 11 Ohio App.3d at 280–281, 11 OBR at 460–461, 465 N.E.2d at 477–478.

Moreover, although there are not any pertinent legislative notes or committee comments relating to R.C. 2919.25, the Committee Comments to R.C. 2907.02 (rape) do lend additional insight into the legislature's use of the word "cohabiting." R.C. 2907.02 provides in pertinent part:

"(G) It is not a defense to a charge under division (A)(2) of this section that the offender and the victim were *married or were cohabiting* at the time of the commission of the offense." (Emphasis added.)

In explication, the Committee Comments state:

"[T]he section does away with distinctions of sex between offenders and victims, for the reason that homosexual and lesbian assaults can be as dangerous to victims as heterosexual assaults."

Thus, the Committee Comments indicate that the legislature does not consider "cohabiting" to be a strictly heterosexual activity. Further, the Committee Comments recognize that assaults between homosexuals are just as worthy of protection as assaults between heterosexuals.[2]

---

**2.** If the domestic violence statutes do not apply to couples of the same sex, a gay or lesbian citizen would not be entitled to the legal protection afforded to victims under the temporary protection order statute whereunder a pretrial stay-away order can issue. See R.C. 2919.26. The notion that gay victims can be just as protected by pursuing an assault case rather than a domestic violence case and seeking a stay-away order as a condition of bond is specious

■ Finally, fundamental principles of constitutional law would preclude application of the domestic violence laws only to heterosexuals. A gender-based construction of the statute would render the statute unconstitutional on equal protection grounds. *Cleburne v. Cleburne Living Ctr.* (1985), 473 U.S. 432, 439–441, 105 S.Ct. 3249, 3254–3255, 87 L.Ed.2d 313, 320–321; *State v. Liberta* (1984), 64 N.Y.2d 152, 162, 485 N.Y.S.2d 207, 217, 474 N.E.2d 567, 577. In this regard, "courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional." *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 151, 446 N.E.2d 449, 450. Accordingly, this court construes R.C. 2919.25(E) so as to avoid an equal protection challenge to the constitutionality of the statute.

■■ Based upon common usage, the statutory context, and Ohio case law, "cohabiting" can generally be defined as living together and functioning as a husband and wife. The parties need not be husband and wife, but rather need only function as husband and wife, *i.e.,* be "otherwise cohabiting." The most persuasive factors in evaluating the existence of cohabitation as a spouse include whether or not the parties are (1) living together under one roof; (2) sharing expenses and liabilities; (3) owning property together; (4) socializing together as a couple; (5) engaging in a sexual relationship; (6) exchanging vows of commitment; (7) parenting a child together; and/or (8) raising children together. Each case must be decided on its own particular evidence presented. *Sindel v. Sindel, supra,* 7 O.O.3d at 226.

■ In light of these principles of law, and upon the evidence presented at trial in this cause, which evidence satisfies virtually all of the factors indicative of cohabitation, the court concludes that the victim here, Vickie Birch, has proved beyond a reasonable doubt that she is a person who otherwise is cohabiting with the defendant. Thus, the domestic violence statute applies to this same-sex couple. Moreover, upon the evidence of the assault as described above, the court concludes easily that the defendant knowingly caused physical harm to Birch.

Accordingly, upon the law and evidence, the court adjudges the defendant guilty of committing the crime of domestic violence by knowingly causing physical harm to Vickie Birch, a household member, to wit, a person of the same sex with whom the defendant was cohabiting as a spouse, or "otherwise is cohabiting," *i.e.,* living together as lovers in an intimate relationship, sharing in the support of children and of each other. Toward the twin goals of ensuring the victim's safety

---

because the protection of a temporary protection order is clearly more significant, as its violation results in additional criminal liability versus merely revocation of bond. Moreover, homosexuals who cohabit may have a greater need for the statutory protections of the domestic violence statutes because the homosexual offender may threaten exposure of the victim's homosexual status if criminal charges are pursued.

and holding the batterer accountable, the defendant is sentenced as appears of record.

SO ORDERED.

*Defendant found guilty.*