The STATE of Ohio, Appellee,

v.

YADEN, Appellant.

[Cite as *State v. Yaden* (1997), 118 Ohio App.3d 410.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960483.

Decided March 5, 1997.

*Fay D. Dupuis,* City Solicitor, *Terrence R. Cosgrove* and *Liza A. Kotlarsic,* Assistant City Solicitors, for appellee.

*Hal R. Arenstein* and *William R. Gallagher,* for appellant.

PAINTER, Judge.

We are asked to decide whether a person living in a same-sex relationship may be guilty of domestic violence against the other person in violation of R.C. 2919.25. This is an issue of first impression in this district. We hold that under the statutory definition provided by the legislature, a person living in a same-sex relationship may commit domestic violence upon the other, though each case will turn on its attendant facts.

## I.   Facts [1]

In late April 1996, Dave Thompson, Joe Fields, Fields's son, Joe Jr., and defendant-appellant, Ronnie Yaden, went to a flea market. Fields and Yaden began to argue, and the group returned to Fields's apartment. Thompson and Joe, Jr. left the apartment temporarily. As the argument became louder, Fields threatened to call the police unless Yaden quieted down. Fields testified that Yaden ripped the phone from the wall and threw it, striking Fields in the forehead. Yaden then allegedly punched Fields in the stomach. When Thompson returned, he saw the broken telephone on the floor. According to Thompson, Fields picked up the phone receiver and hit himself in the head with it. Yaden denied hitting Fields either in the head or in the stomach.

Fields and Yaden had been living together as a same-sex couple for approximately four years, but had broken up shortly before this incident. While living together, Fields and Yaden had a sexual relationship, shared expenses, and attended social activities together. Fields testified that he had made a commitment to be with Yaden during this time. After the breakup, Yaden continued to keep personal belongings in Fields's apartment and would stay with Fields when he had no other place to stay.

---

1.   We *sua sponte* remove this case from the accelerated calendar.

At the time of the incident, Fields was married to a woman; however, the nature and extent of that relationship was unclear in the record. Fields admitted that he took four different psychotropic medications.

Based upon this record, the trial court found Yaden guilty of a violation of R.C. 2919.25(A), domestic violence. Yaden has appealed, arguing that (1) a same-sex relationship cannot give rise to an offense under the domestic violence statute, because one partner cannot be "living as a spouse" as defined in the statute; and (2) the judgment was against the manifest weight of the evidence.

## II. "Living as a Spouse"

Yaden argues that the trial court erred when it found that a same-sex relationship falls within the statutory definition of "living as a spouse." Yaden asserts that people who are not permitted legally to marry cannot live as though a marriage has occurred.

R.C. 2919.25(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2919.25(E)(1)(a)(i) defines "family or household member," in pertinent part, as "[a] spouse, a person living as a spouse, or a former spouse of the offender." R.C. 2919.25(E)(2) further defines "living as a spouse" as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within one year prior to the date of the alleged commission of the act in question." Thus, Yaden asserts that he and Fields did not "cohabit" when they were living together for the four years prior to the incident, because, in his view, same-sex couples cannot "cohabit."

Yaden moves away from defining "cohabitation" and focuses instead on how the phrase "living as a spouse" "conjures up visions of a couple together without the benefit of a license but appearing in all other aspects to be husband and wife." The statute defines "living as a spouse" as a person who is otherwise *cohabiting or has cohabited* with the offender within one year of the alleged act.

The definition of "cohabitation" in the context of domestic violence in a same-sex relationship controls our decision on this issue. Jurists across the country have struggled to provide guidance. Because the Ohio Supreme Court has not spoken on this issue, we set out some definitions from courts across the country. One caveat to this compilation of definitions is that they are taken from a mix of various contexts that emphasize different aspects of "cohabitation." Each unique set of facts giving rise to each court's focus on certain aspects over other aspects illustrates the complexity, difficulty, and danger in creating some all-encompassing definition to describe intimate relationships.

In Alabama, cohabitation means "some permanency of relationship coupled with more than occasional sexual activity between the cohabitants." [2]   In California, cohabitation means "an unrelated man and woman living together in a substantial relationship manifested principally by a [sic] permanence, or sexual, or amorous intimacy." [3]   In Delaware, the alimony statute defines cohabitation as "regularly residing with an adult of the same or opposite sex, if the parties hold themselves out as a couple, and regardless of whether the relationship confers a financial benefit." [4] The Delaware Supreme Court has defined cohabitation as an "arrangement existing when two persons live together in a sexual relationship when not legally married." [5]   In New Jersey, cohabitation is "generally residing together in a common residence * * * where they generally engage in some, but not necessarily all of the following: meals taken together at the residence; departing from and returning to the residence of the other for employment and/or social purposes; maintaining clothing at the other's residence; sleeping together at the residence, or the residence of the other; receiving telephone calls at the residence or the residence of the other." [6]

Other definitions include: "living together as husband and wife" (Illinois); [7] "a significant live-together relationship" (Iowa); [8] "the mutual assumption of those marital rights, duties, and obligations which are usually manifested by married people including but not necessarily dependent on sexual relations" (Kentucky); [9] "living together as husband and wife without a legal marriage having been performed" (Maryland); [10] "living together as man and wife, though not necessarily implying sexual relations" (North Carolina); [11] "living together in the same

---

2.  *Ex parte Randall Ayers* (Ala.1994), 643 So.2d 1377.

3.  *California v. Moore* (1996), 44 Cal.App.4th 1323, 52 Cal.Rptr.2d 256.

4.  13 Del.C. 1512(g).

5.  *Gertrude L.Q. v. Stephen P.Q.* (Del.1983), 466 A.2d 1213.

6.  *Melletz v. Melletz* (1994), 271 N.J.Super. 359, 638 A.2d 898.

7.  *In re Marriage of Sandra Harris* (1990), 203 Ill.App.3d 241, 148 Ill.Dec. 541, 560 N.E.2d 1138.

8.  *Iowa v. Kellogg* (Iowa 1996), 542 N.W.2d 514.

9.  *Cook v. Cook* (Ky.1990), 798 S.W.2d 955.

10.  *Gordon v. Gordon* (1996), 342 Md. 294, 675 A.2d 540.

11.  *Rehm v. Rehm* (1991), 104 N.C.App. 490, 409 S.E.2d 723, citing *Young v. Young* (1945), 225 N.C. 340, 34 S.E.2d 154.

house" (South Carolina); [12] "dwelling or living together; community of life" (Texas); [13] "doing things ordinarily done by spouses" (Texas); [14] and "liv[ing] together permanently or for an indefinite period and assum[ing] the duties and obligations normally attendant with a marital relationship." (Virginia).[15]

These definitions are not terms of art, but rather descriptions designed to assist fact-finders to discover whether the unique circumstances surrounding individual relationships can be categorized for some legal purpose, generally concerning alimony or domestic violence.

Against this backdrop of definitions, we turn to Ohio jurisprudence in this area. Cohabitation has not been defined by the Ohio Supreme Court. In *State v. Williams,* this court followed *State v. Van Hoose* and held that "cohabitation" is "a man and a woman living together in the same household and behaving as would a husband and wife." [16] But the context of our decision and the decision upon which it was based concerned opposite-sex relationships and did not involve same-sex cohabitation.

How literal should our interpretation be of "a man and a woman" or "husband and wife" as defined under the *Van Hoose* or *Williams* facts in which the cohabitors were men with women? The court in *Van Hoose* held that the elements that constitute living together in the same household as husband and wife pose a question of fact in each particular case—for example, in cases in the divorce/alimony context one key element for inquiry is financial support.[17] It would be fair to suggest that because same-sex couples were not contemplated under the facts of these Ohio cases, their definitions do not exclude same-sex couples. As illustrated by the many definitions above, "cohabitation" takes on different meanings in different contexts.

The Second District Court of Appeals has defined cohabitation in the alimony context as the "voluntary assumption of obligations equivalent to those arising

---

12. *E.D.M. v. T.A.M.* (1992), 307 S.C. 471, 415 S.E.2d 812.

13. *Kurtz v. Jackson* (Tex.App.1993), 859 S.W.2d 609.

14. *Myers v. Gann* (Tex.Ct.App.1992), 1992 WL 49817, 1992 Tex.App. LEXIS 725.

15. *Frey v. Frey* (1992), 14 Va.App. 270, 416 S.E.2d 40.

16. *State v. Williams* (Mar. 13, 1996), Hamilton App. No. C–950530, unreported, 1996 WL 107574, citing *State v. Van Hoose* (Sept. 27, 1993), Clark App. No. 3031, unreported, 1993 WL 386314.

17. See *Herzog v. Herzog* (Dec. 31, 1996), Hamilton App. Nos. C–960037 and C–960039, unreported, 1996 WL 741978. See, generally, *Fuller v. Fuller* (1983), 10 Ohio App.3d 253, 10 OBR 366, 461 N.E.2d 1348; *Taylor v. Taylor* (1983), 11 Ohio App.3d 279, 11 OBR 459, 465 N.E.2d 476.

**416**

from a ceremonial marriage."[18]   The Fifth District Court of Appeals has defined cohabitation in the context of domestic violence as living together in a sexual relationship when not legally married.[19]

The seminal Ohio case with facts describing domestic violence in a same-sex relationship is *State v. Hadinger.*[20]   In *Hadinger,* the Tenth District Court of Appeals compiled various definitions given for cohabitation and stated that the only common thread among those definitions was simply "liv[ing] together in an intimate relationship."[21]   The Hamilton County Municipal Court has agreed with *Hadinger* that same-sex couples are subject to the domestic violence statute.[22] Thus, the only two Ohio cases that have considered the issue both hold that same-sex couples are covered by the definition of cohabitation.   This reasoning comports with the list of definitions described above, but more guidance is necessary.

■   In short, definitions of "cohabitation" have two fact-specific prongs: financial support and consortium.   Factors that establish financial support include shelter, food, clothing, utilities, and perhaps commingled assets.   Factors that establish consortium include mutual respect, fidelity, emotional support, affection, society, cooperation, solace, comfort, aid to each other, friendship, conjugal relations and companionship.[23]   The facts that rise to the level of "cohabitation" are unique to each case, and can only be sifted on a case-by-case basis by triers of fact.[24]

■   The *Hadinger* court concluded that, by the language of R.C. 2919.25, the legislature intended to protect persons who are cohabiting, regardless of sex.   It is true that same-sex couples are not permitted to be "spouses" of each other. But the definition of "living as a spouse" includes a larger segment of couples— not only "spouses" but also "cohabitors."   Opposite-sex couples who "cohabit" are protected.   We can see no tangible benefit to withholding this statutory protection from same-sex couples.

---

18.   *Perri v. Perri* (1992), 79 Ohio App.3d 845, 608 N.E.2d 790.

19.   *State v. Hunt* (Mar. 18, 1996), Stark App. No. 95CA0226, unreported, 1996 WL 132268.

20.   *State v. Hadinger* (1991), 61 Ohio App.3d 820, 573 N.E.2d 1191.

21.   *Id.* at 823, 573 N.E.2d 2d at 1193.

22.   *State v. Linner* (M.C.1996), 77 Ohio Misc.2d 22, 665 N.E.2d 1180.

23.   See, generally, Kaska, Iowa Unmarried Cohabitants Denied Recovery for Loss of Consortium (1984), 69 Iowa L.Rev. 811.

24.   See *Fuller; Taylor, supra.*

Furthermore, R.C. 2919.25 has been amended four times since *Hadinger* was decided. We can safely assume that the legislature was fully aware of the *Hadinger* decision when it drafted these amendments.[25] Thus, the legislature implicitly endorsed *Hadinger* when it declined to alter the definition of "cohabit" to exclude same-sex couples.

■ For these reasons, R.C. 2919.25 applies to same-sex couples that "cohabit" as described above. Under our facts, the testimony is more than sufficient to establish that Fields and Yaden cohabited. Accordingly, we overrule this assignment of error.

### III. Manifest Weight of the Evidence

■ When considering a manifest-weight claim, we inquire whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt based on the record.[26] Fields testified that Yaden hit him in the head with a phone and in the stomach with his fist. Yaden asserts that this testimony was not credible because Fields was on psychotropic medication. Yaden further asserts that Thompson testified that Fields struck himself with the phone, creating reasonable doubt.

■ Fields's psychiatric condition, based solely on the disclosure of medications that he took, did not render him incompetent to testify.[27] The credibility of Fields's and Thompson's testimony and the weight given to their testimony were a matter for the trier of fact.[28]

We are satisfied that the trial court was well within its discretion when giving weight to Fields's testimony in the context of the whole record, notwithstanding his undisclosed "psychiatric condition." As Yaden raises no other weight-of-the-evidence issues, we overrule this assignment of error. Accordingly, we overrule both assignments of error and affirm the judgment of the trial court.

*Judgment affirmed.*

Doan, P.J., and Hildebrandt, J., concur.

---

**25.** See, generally, *Dublin v. Young* (1996), 75 Ohio St.3d 472, 663 N.E.2d 1270; *Seeley v. Expert* (1971), 26 Ohio St.2d 61, 55 O.O.2d 120, 269 N.E.2d 121; *State ex rel. Durr v. Spiegel* (1914), 91 Ohio St. 13, 109 N.E. 523.

**26.** *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–219, 485 N.E.2d 717, 720.

**27.** *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220.

**28.** *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.