COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Frank and Clements
Argued at Alexandria, Virginia


ADNAN BCHARA

                                             OPINION BY
v.     Record No. 1529-01-4         JUDGE ROBERT P. FRANK
                                             MAY 21, 2002
MARJA KAARINA BCHARA


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    M. Langhorne Keith, Judge

          Jeffrey A. Vogelman (Thomas, Ballenger,
          Vogelman & Turner, on briefs), for appellant.

          William B. Reichhardt (Colleen C. Sweeney, on
          brief), for appellee.


     Adnan Bchara (husband) appeals from a final decree of

divorce from Marja Bchara (wife). The circuit court granted a

divorce based on the parties living separate and apart for one

year and found no marital property existed. Husband asks this

Court to reverse the trial court's grant of divorce and the

accompanying property determinations, arguing (1) he and wife

were not separated as of January 2000, (2) the trial court

improperly found the home and the personal property were the

separate property of wife, (3) the trial court did not properly

consider the factors in Code § 20-107.3(E), and (4) the final

decree did not address marital debt. For the reasons stated, we

affirm in part and reverse in part.

BACKGROUND

Husband and wife were married on March 31, 1991.  Prior to the marriage, wife had inherited approximately $950,000 when her father, who lived in Finland, died.  She continued to keep the balance of that inheritance, as well as the additional inheritance received on her mother's death in 1997, in a bank account in Finland.  Husband had no access to this account.

Throughout the marriage, wife transferred funds from the Finland account into a joint account in the United States, which both husband and wife used.  Husband alleged he also contributed money to the joint account,[1] but presented only his own testimony as proof of these deposits.

Prior to their marriage, husband and wife lived together in a home purchased by wife with money from her inheritance.  She titled the home in both their names.  Eventually, this original home was sold, and the majority of the money from that sale was deposited in wife's Finland account.

The parties purchased land to build a new home in Fairfax County in 1993.  Wife deposited money from her Finland account into their joint checking account to pay for the land.  She also made numerous large deposits into the joint account to cover the

---

[1] According to his testimony, husband had owned a flower shop, which he sold prior to the marriage for $20,000.  He claimed a substantial portion of that money was deposited into the joint account.  Husband also worked briefly during the marriage.

construction expenses for the new home. Generally, husband wrote the checks on the joint checking account that paid the contractor and suppliers.

The trial court held all of the money in the joint account came from wife and her inheritance in Finland. The evidence on this issue consisted of bank records for the joint account that listed deposits as either transfers from the Finland account or small deposits that failed to specify a source. None of the records suggested a deposit of salary or other non-inheritance money. Husband presented no check stubs, cancelled checks, or bank records to support his testimony that he made deposits into the joint account from his salary, the sale of his flower shop, income from investments, or any other source. The trial court concluded wife's inheritance was the sole source of funds used to pay for building the new home and for the personal property in that home, including all the cars and furniture.

Husband testified that he worked full time at the new home's construction site, both supervising and engaging in physical labor. He also testified that he traveled abroad to purchase items for the new home, which he alleged saved hundreds of thousands of dollars in the cost of construction materials. He designed several elements in the home, including a marble table and medallions in the floors. He claimed his negotiation efforts reduced the purchase price of the land and the labor costs of building.

The contract manager for the building of the home testified that husband "did a lot of hard work" at the construction site. However, the manager often found husband's work was incomplete or inadequate. For example, husband installed all the sky lights; however, they leaked and damaged the drywall in three rooms. Husband also decided to cut down a tree on the property, which fell through the bedroom roof. Husband built several retaining walls, but did not complete them.

Husband produced no evidence as to the monetary value of his labors, except his testimony that he saved $29,000 by building a retaining wall himself. Husband presented no evidence that this wall was necessary or that it substantially increased the value of the home.

An investment account, titled solely in husband's name and funded by wife's inheritance, was opened with Dean Witter sometime in 1994. Additional money passed into this account through the joint checking account. Husband was in charge of this fund. He transferred the money in the Dean Witter account to Ameritrade sometime in 1998. Wife claimed no knowledge of the current balance of the account. Husband claimed wife knew the investments were performing well at one point.

Husband testified that the investments began to perform poorly around March 2000. As a significant portion of husband's investments were purchased "on margin," he had to sell his stock

to cover his "margin calls."[2]  However, he could not raise enough money solely by liquidating his stock, so husband covered the rest of the alleged $45,000 debt to Ameritrade with a credit card issued solely in his name.  No documents were presented to the trial court verifying the status of the Ameritrade account or the credit card debt.

The couple had one son, born in March 1995.  After the child's birth, husband claimed he and wife stopped having sexual intercourse.  Husband admitted having affairs with numerous women both before and after the birth, claiming his wife knew and agreed he was free to pursue such relationships.

On January 22, 2000, wife and a friend discovered a videotape of husband having sex with another woman.  Wife testified she put all of husband's belongings in the guest bedroom on that day.  Husband usually slept in that room prior to the moving of his belongings.  Wife's friend testified she visited the home about once a week after January 2000 and saw husband and wife living separately and apart.

The parties continued to live in the same home until April 2001 when the trial court awarded the home to wife and ordered husband to leave.  There is no allegation of sexual intercourse between them after January 2000.

---

[2] Husband did not describe the investments he made.  No evidence explained the types of stock purchases he made using margins or the types of margins he used.  No documentation of the Ameritrade account was introduced into the record.

The commissioner in this case was asked to decide whether a fault basis for divorce existed. He found husband committed adultery that led to the dissolution of the marriage,[3] but recrimination by wife prevented granting the divorce on that ground. The commissioner noted "neither party has sought a divorce on the ground of voluntary separation at the present time," but recommended the trial court hear testimony on separation and grant a divorce on that ground if supported by additional evidence.

Wife testified in deposition that she stopped depositing money into their joint account after discovering the videotape. She also stopped going to church with husband and stopped attending his family's functions after the discovery.

She admitted buying groceries, doing laundry, and cooking food that husband ate. She also accepted flowers from husband, given to her in their son's name on Mother's Day of 2000. Wife testified she intended to remain permanently apart from husband after January 22, 2000. She did ask him to leave the house several times, but he refused.

The trial court granted a divorce a vinculo matrimonii, finding the parties had lived separate and apart since January

_____

[3] The commissioner found "the circumstances and factors which contributed to the dissolution of the marriage" were "[t]he continuous and substantial lack of fidelity on the part of Husband and his crass understanding of the marital vows" and "[t]he lack of gainful employment on the part of the Husband in the later half of the marriage."

2000, a period of more than one year. The court also found the money used to build the new house was traced from wife's Finland account, with no contribution from husband; therefore, the house was deemed wife's separate property. The court found no evidence of gift.

The court also found no evidence of the value of husband's non-monetary contributions to the construction of the new home. The trial court concluded husband did not substantially add to the value of the home and, therefore, he had no interest in the property.

The trial court held all the personal property was purchased by wife with her inheritance and classified it all as wife's separate property. The court did not address the issue of debt.

ARGUMENT

The issues on appeal all involve questions of sufficiency of the evidence to support the final decree. As the trial court heard evidence ore tenus, these factual findings will not be disturbed unless plainly wrong or without evidential support. See Williams v. Williams, 14 Va. App. 217, 219, 415 S.E.2d 252, 253 (1992). We review the evidence and the inferences derived from that evidence in the light most favorable to wife, the party prevailing below. See id. at 220, 415 S.E.2d at 253.

1.  Separate and Apart

Husband argues the parties did not separate in January 2000, the corroborating evidence of separation was insufficient, and the trial court should not have granted a divorce on this ground.  Examining the evidence in the light most favorable to wife, we find the trial court's determination is supported by the record.  See id. at 219-20, 415 S.E.2d at 253.

Under Code § 20-91(A)(9)(a), a divorce may be granted "[o]n the application of either party if and when the husband and wife have lived separate and apart without any cohabitation and without interruption for one year."  This statute requires "proof of an intention on the part of at least one of the parties to discontinue permanently the marital cohabitation, followed by physical separation for the statutory period." Hooker v. Hooker, 215 Va. 415, 417, 211 S.E.2d 34, 36 (1975). Determination of whether and when the parties have "lived separate and apart without cohabitation" is a fact-based inquiry, requiring examination of all the circumstances before the court.  Cf. Rickman v. Commonwealth, 33 Va. App. 550, 557-58, 535 S.E.2d 187, 191 (2000) (discussing the factors a court should consider to determine whether two people are cohabiting for purposes of Code § 18.2-57.2).

Husband argues the parties did not live separate and apart until May 2000, when wife served husband with divorce papers. He argues the parties lived as they normally did until that

time.  As the divorce order found the parties had separated in January 2000, husband claims no evidence proved the parties had lived separate and apart for a year.[4]

In January 2000, wife found a videotape showing husband involved in an adulterous affair.  She immediately took all of husband's possessions out of the master bedroom and put them in a guest bedroom, where husband usually slept.  A friend of wife was in the house when the tape was discovered.  Husband does not deny that wife found the tape or that she moved all his belongings into the guest bedroom, although he claims none of this changed their marital relationship.[5]

Wife testified she took several actions to live separate and apart from husband starting in January 2000.  She stopped attending family functions with husband and his family.  She would not attend church with him.  She stopped depositing money into their joint checking account.  However, she continued to buy groceries, cook, do laundry, and clean house.[6]  Wife asked husband several times to leave the house, but he refused.

---

[4] The decree was entered on May 8, 2001.

[5] Husband testified that wife knew about his infidelity and did not care.  The commissioner found wife did not condone husband's affairs, especially the last one.  The parties agree they had not had sexual intercourse for a long time, perhaps years.

[6] The parties' son also lived in the house.

A friend of wife testified she visited the house once a week and observed the parties living in separate bedrooms. Wife told this friend that she and husband were no longer "a couple." Wife testified that she intended to live separate and apart from husband as of January 2000.

This evidence is sufficient for a trial court to find the parties were living separate and apart without cohabitation. The parties no longer engaged in sexual intercourse. Husband openly continued a sexual relationship with another woman. Wife stopped attending functions with husband. Continuing to share food and keep a clean house are not behaviors that, as a matter of law, require a finding that the parties were living together. See Chandler v. Chandler, 132 Va. 418, 428-31, 112 S.E. 856, 860-61 (1922) (finding desertion does not require neglect of all aspects of the marital relationship). Wife intended to permanently discontinue the marital relationship when she moved husband into the guest bedroom. See Hooker, 215 Va. at 416-17, 211 S.E.2d at 36. The only attempt husband made to change the situation involved putting his personal items back into the master bedroom and throwing wife's possessions into the guest bedroom.

Husband argues wife did not appropriately corroborate her allegations that they separated in January 2000. We disagree. "Every element or essential charge need not be corroborated, nor must the corroborating evidence, standing alone, prove the

grounds for divorce, but corroboration must give sufficient strength to the complainant's testimony to be clearly worthy of belief." Emrich v. Emrich, 9 Va. App. 288, 296, 387 S.E.2d 274, 278 (1989).

Wife's testimony was corroborated by her friend, who was present when wife found the videotape and moved husband's possessions into the guest room. This friend testified she visited the house once a week and observed the parties living separate and apart. The videotape of husband's infidelity also corroborated wife's allegations. This evidence provided sufficient corroboration.

## 2. Separate Property

The trial court found wife had traced all the funds used to build the home and to purchase other personal property to her inheritance, which was kept in her personal accounts in Finland. Husband argues this money was deposited into a joint account and the home was titled in both their names; therefore, he claims the home became marital property. He also alleges he contributed funds to the joint account. Additionally, he argues his personal efforts increased the value of the home, resulting in substantial appreciation of the property and giving him an interest in the home.[7]

---

[7] The trial court found no evidence the property was a gift, and husband does not argue any property was gifted to him. See Barker v. Barker, 27 Va. App. 519, 532 n.2, 500 S.E.2d 240, 246

Marital property includes "all property titled in the names of both parties" and property acquired by either spouse during the marriage "in the absence of satisfactory evidence that it is separate property."  Code § 20-107.3(A)(2).  Separate property is:

> (i) all property, real and personal, acquired by either party before the marriage; (ii) all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party; (iii) all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property; and (iv) that part of any property classified as separate pursuant to subdivision A 3.

Code § 20-107.3(A)(1).  Subdivision (A)(3) includes provisions allowing the court to find separate property exists, even when marital and separate property are "commingled" in some manner, "to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift."  See, e.g., Code § 20-107.3(A)(3)(d), (e), (f).

The home, built during the marriage, was jointly titled and, therefore, presumed marital property.  Hence, the burden was on wife to establish that the property could be traced to her separate inheritance.  See Rexrode v. Rexrode, 1 Va. App. 385, 392, 339 S.E.2d 544, 548 (1986).  To classify all or a

n.2 (1998) (noting the parties failed to raise the issue of gifting under Code § 20-107.3(A)(3)).

portion of such property as separate and not marital, "the circumstances of each case" must allow the court to trace the spouse's contribution back to separate property. von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 160 (1997).

Here, the trial court found wife presented sufficient evidence to trace the purchase of the home to her separate funds. We will not overturn that factual finding unless plainly wrong or without evidence to support it. See Gilman v. Gilman, 32 Va. App. 104, 115, 526 S.E.2d 763, 768 (2000) (noting the standard of review for equitable distribution issues in a divorce case).

The parties agree wife had separate property through an inheritance in Finland.[8] The parties also agree large portions of this inheritance were deposited into a joint account for the purpose of building the home. Depositing separate funds into a joint account does not preclude tracing. See Rahbaran v. Rahbaran, 26 Va. App. 195, 207-10, 494 S.E.2d 135, 140-42 (1997).

Husband, who had no job during the building of the home, claims he deposited money into the joint account at several points. He testified he worked for the State Department in 1992 for nine months and for a real estate agent sometime between

---

[8] Appellant does not argue the Finland account ever became marital property because the proceeds from the sale of the first home were deposited into the separate account.

1993 and 1995.  He alleges these paychecks were deposited into the joint checking account.  He also claims, when he sold the flower shop he owned prior to the marriage, he deposited the proceeds from that sale into the joint account.  He further alleges he deposited $38,000 from his trading account into the joint checking account sometime in 1998 or 1999.

However, husband provided no documentation of those deposits.  The records introduced into evidence show no deposits into the joint account from husband, and wife testified he made no monetary contribution to the home.  The trial court was free to find wife's testimony and documents credible and to disregard husband's testimony.  See Brown v. Brown, 30 Va. App. 532, 539, 518 S.E.2d 336, 339 (1999).

Husband also claims, even if he made no monetary contributions to the building of the home, he worked on its construction.  He argues these efforts transmuted the separate property into marital property as his contribution was significant and substantially increased the value of the home. See Code § 20-107.3(A)(1), (3).

The non-owning spouse[9] has the burden of proving his or her personal efforts were significant and resulted in substantial

_____

[9] We use the term, "non-owning spouse" in the context of our finding that wife has met her burden of tracing her separate funds to the home.  Therefore, the home, while jointly titled, is considered the separate property of wife under Code § 20-107.3(A).

appreciation of separate property.  Gilman, 32 Va. App. at 120, 526 S.E.2d at 771; Martin v. Martin, 27 Va. App. 745, 751, 501 S.E.2d 450, 453 (1998).  "The increase in value of separate property becomes marital if the expenditure of marital funds or a married party's personal efforts generated the increase in value.  The significant factor, however, is not the amount of effort or funds expended, but rather the fact that value was generated or added by the expenditure or significant personal effort."  Gilman, 32 Va. App. at 120, 526 S.E.2d at 771.

Helping a spouse select the "best deal" generally is not "significant personal effort."  See id. at 121, 526 S.E.2d at 771; Martin, 27 Va. App. at 754-55, 501 S.E.2d at 454-55.  The record should include evidence of the monetary value of the non-owning spouse's personal efforts as well as evidence of a substantial increase in the value of the property resulting from those efforts.  See Rowe v. Rowe, 24 Va. App. 123, 136, 480 S.E.2d 760, 766 (1997); Hart v. Hart, 27 Va. App. 46, 66, 497 S.E.2d 496, 505 (1998) ("It is the value that improvements add to the property, not their cost, that is the proper consideration . . . .").

Husband did not meet his burden of proof.  He did prove he spent a significant amount of time at the construction site and physically contributed to the building of the home.  However, the only evidence that suggested a value for his labor was husband's testimony of a contractor's estimate of $29,000 to

build a retaining wall.  As the overall value of the house was $950,000, we agree with the trial court that this contribution was not "significant" in the context of Code § 20-107.3(A), even if this valuation of husband's labor was appropriate.  In addition, no evidence was presented to prove husband's efforts resulted in substantial appreciation in the property.  See id. As the trial court's opinion letter explained, "there was an almost complete lack of proof on the value of Husband's contribution [from his work at the site]."

In fact, the opinion letter highlighted testimony that "Husband's work was faulty and had to be redone by others." Based on this evidence, the trial court could have determined that husband's efforts did not increase the value of the home, given the testimony characterizing some of his work as inadequate and counterproductive.  See Brown, 30 Va. App. at 539, 518 S.E.2d at 339 (noting the trial court determines the weight and credibility of witnesses).

Husband also argues his negotiations and dealings with suppliers resulted in substantial savings during the construction of the home.  He claims his efforts reduced the price of the land for the home from $100,000 to $88,000.  He also claims, by purchasing marble for the home in Syria, he saved $375,000 in materials costs.  However, the trial court was not required to credit this testimony by husband.  See id. Additionally, even if husband's negotiations saved money, those

efforts are not the type of "personal efforts" required to transmute a portion of separate property into joint property under Code § 20-107.3(A)(3).  See Gilman, 32 Va. App. at 120-21, 526 S.E.2d at 771 (finding efforts to purchase property at a reduced price did not constitute significant personal effort).

This analysis also applies to the trial court's characterization of the personal property.  The court found wife proved her separate inheritance was used to purchase all of the personal property.  At this point, the burden shifted to husband to prove his personal efforts were significant and resulted in substantial appreciation of this separate property.  He did not meet this burden.

The trial court did not evaluate each item of personal property on the schedules submitted by the parties.  For most of these items, no evidence was introduced, except for the testimony and documents regarding tracing.  Testimony and receipts about several pieces of furniture were introduced.

Husband admitted wife paid for the furniture.  However, he contends his family connections allowed them to buy the furniture at a discount.  This evidence does not prove husband made a significant contribution that substantially increased the value of the property.  See Martin, 27 Va. App. at 754-55, 501 S.E.2d at 454-55.  The value of the furniture remained the same, only the price decreased.

A review of the record does indicate wife conceded a 1995 Izuzu Trooper belonged to husband. The trial court did not address this concession in determining the status of the property. On remand, husband should be awarded this vehicle.

### 3. Code § 20-107.3(E)

Code § 20-107.3(E) requires a trial court consider a list of enumerated factors before determining "the amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, the apportionment of marital debts, and the method of payment." Husband argues the trial court did not consider all these factors. However, the trial court found no marital property existed to divide between the parties. Because all the property in this case was separate property, the trial court did not need to apply the provisions of Code § 20-107.3(E).[10]

### 4. Debt

Neither the final decree nor the opinion letter mentions husband's request that the trial court assess marital debt. We agree with husband that the trial court should have addressed this issue.

---

[10] The trial court will need to apply these factors if the court determines on remand that marital debt exists.

Husband testified he actively invested in the stock market through a personal account opened in his name at Ameritrade.[11] Wife provided $45,000 to open the initial account. At one point, the account grew to over $400,000.

In March 2000, the stock market declined, and husband had significant margin calls to cover. He testified he liquidated his account as much as he could, but still had to charge approximately $45,000 to a credit card to cover the margin debt. Husband did not present any documentation from the investment account or the credit card company. Wife admitted husband had an account that performed well at one point, but she did not know what happened to the account.

The trial court did not discuss this debt or make a ruling regarding the existence of the debt. On remand, the trial court must determine if the debt exists and, if it does, whether it is marital or separate debt. If it is marital debt, then the court must apply Code § 20-107.3(E) to determine the distribution of the debt. See Holden v. Holden, 35 Va. App. 315, 325, 544 S.E.2d 884, 888 (2001) (noting that one party should not suffer a loss because a marital asset decreases in value before division of the property occurs); Barker, 27 Va. App. at 542-43, 500 S.E.2d at 251 (noting that the court should examine marital debt in determining an equitable distribution award).

---

[11] Initially, husband opened an account at Dean Witter, but later moved it to Ameritrade.

## Attorney's Fees

In her brief, wife asks for an award of attorney's fees and costs associated with this appeal. Given wife substantially prevailed and husband's arguments were largely without merit,[12] we find it appropriate to award wife attorney's fees and costs. See Marks v. Marks, 36 Va. App. 216, 218, 548 S.E.2d 919, 920 (2001). The trial court on remand must determine the appropriate amount to award wife. In making this determination, the trial court should consider, while husband prevailed on two minor issues, the principal arguments he made on appeal were without merit.

## Conclusion

We affirm the trial court's grant of divorce on the ground of living separate and apart for a year. We also affirm the finding that the home and the personal items are the separate property of wife. However, we remand for the trial court to award the Izuzu Trooper to husband. We also remand the issue of the credit card debt for the trial court (1) to determine whether any credit card debt exists, (2) if such debt exists, to classify that debt as marital or separate, and (3) to apportion any marital debt pursuant to the Code. Finally, we remand for the trial court to determine and award reasonable costs and

---

[12] Husband is entitled to one item of personal property and correctly argued that the trial court made no ruling on the credit card debt.

attorney's fees associated with this appeal to wife, consistent

with this opinion.

<u>Affirmed in part;</u>
<u>remanded in part.</u>