COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Clements and Senior Judge Coleman
Argued at Alexandria, Virginia


ROY L. PEARSON, JR.

                                                MEMORANDUM OPINION* BY

v.      Record No. 0561-04-4        CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                     MARCH 8, 2005

RHONDA S. VANLOWE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Paul F. Sheridan, Judge Designate[1]

Roy L. Pearson, Jr., *pro se*.

Julie Hottle Day (Robert G. Culin, Jr.; Culin, Sharp & Autry, PLC,
on brief), for appellee.


Roy L. Pearson, Jr. (husband) appeals from a final decree of divorce awarded to Rhonda S. VanLowe (wife) on the ground that the parties lived separate and apart without cohabitation for one year pursuant to Code § 20-91(A)(9)(a).  Husband contends that the trial court erroneously: 1) granted the divorce based on a separation date of October 15, 1999, or October 21, 2001; 2) denied his request for sanctions pursuant to Code § 8.01-271.1; 3) denied his request for spousal support; 4) failed to grant him a reservation of future spousal support; and 5) awarded wife attorney's fees.  He also requests recusal of the trial judge on remand.  For the reasons that follow, we affirm the trial court on all issues except husband's request for a reservation of future support.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On September 11, 2003, Judge Paul F. Sheridan was appointed judge designate as the judges of the 19th Judicial Circuit recused themselves.

# I. SEPARATION BACKGROUND

"On appeal, we construe the evidence in the light most favorable to [wife], the prevailing party below, granting to [her] evidence all reasonable inferences fairly deducible therefrom." Donnell v. Donnell, 20 Va. App. 37, 39, 455 S.E.2d 256, 257 (1995) (citing McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990)).

Husband and wife were married on June 25, 1994. The couple had no children together, although wife had an adult daughter from a prior relationship. Both husband and wife are attorneys. Wife was employed with Rolls Royce of North America, Inc. and with American University. Husband worked for the District of Columbia for over twenty years before losing his job. During the marriage, the couple lived in Reston. However, in the spring of 1997, wife discovered that husband had rented another residence in Washington, D.C. Wife testified that husband moved out of the couple's Reston home in October 1997. Soon afterwards, she moved to Massachusetts to take a job at Reebok International. Husband told wife at this time that there was no chance of reconciliation. Wife returned to Reston in May 1999, and the couple rented an apartment together and opened a joint checking account.

In October 1999, wife's daughter (Melinda), age 24 at that time, had become a source of conflict in the couple's relationship. Wife testified that husband had forbidden Melinda from coming to the couple's house, and said that he would leave if she did. When Melinda came to the house to visit her mother one day in early October, husband became angry and announced he was leaving. He began to move his belongings out of the house the following day.

On October 12, 1999, wife wrote husband a letter indicating that she considered the marriage over, and asked him for a separation agreement. The trial court found that the date of separation was October 15, 1999, as wife asserted in her pleadings. Wife contends that she intended for the separation to remain permanent from October 15, 1999, forward, unless husband

met her conditions for reconciliation. These conditions included husband changing his behavior toward the couple's family, changing his controlling behavior, and becoming financially responsible. She contends that because husband failed to meet these conditions during the separation period, no reconciliation was possible. Wife testified that after the October 1999 separation, the parties shared no marital responsibilities, maintained separate finances, and lived in separate residences. Neither party possessed a key to the other's residence. She also testified that husband sent a formal announcement of their separation to her and at least one family member. Sheila Harris-El, one of wife's witnesses, testified that on two occasions wife "emphatically stated" her intent to remain permanently separated from husband.

Husband contends that although the parties had limited contact for approximately six months following October 1999, wife's pleaded separation date, wife subsequently relinquished her intent to remain permanently separated. He argues that the couple engaged in occasional sexual relations, did not remain separate and apart, and effectively resumed the marital relationship.

Wife conceded that during April, March, and June of 2000, after approximately six months of separation, the parties engaged in occasional sexual intercourse. However, she testified that she did not believe or intend that the sporadic intercourse constituted a resumption of the marital relationship. She also testified that they began a "dating relationship" during this period, but that they did not represent to family or friends that they were husband and wife. Many of their encounters ended in arguments and "with both of us leaving and going our own separate ways." They rarely spent the night together. During the separation period they exchanged letters and postcards discussing their relationship. Neither party ever indicated to family or friends that they had reconciled after October 1999, and wife testified that in June of

2000 when her daughter came to live with her, "that really changed the dynamic of any kind of reconciliation that [they] would have had."

On October 21, 2001, wife left husband a voice mail message stating that there was no possibility of "moving the relationship forward." She testified that she never considered reconciliation possible after this date. There is no evidence of cohabitation or sexual contact after October 21, 2001.

The trial court found that "wife's intent . . . was to permanently end the marriage," despite her sometimes affectionate correspondence to husband. It found that wife maintained "her desire to separate [sic] the marriage unless" husband met certain conditions. It also found that wife's references to marriage counseling and reconciliation were attempts to improve communications with husband, indicating her intent "to ease the hardship of getting out of the marriage on everybody," and "not an intent to resume the marriage." Although wife admitted occasional sexual intercourse, the trial court found that this happened on a sporadic basis. The trial court found that wife never had "a finished hope" or the "aspiration completed of an actual reconciliation." The trial court established an alternative separation date of October 21, 2001 in case "an appellate court reverses or undoes the fact findings and the conclusions just reached by this trial judge."

## II. PROCEDURAL BACKGROUND

On February 14, 2003, wife filed her bill of complaint for divorce on the grounds of having lived separate and apart from October 15, 1999. She made no request for a determination of equitable distribution or spousal support. Husband filed a demurrer to wife's bill of complaint on April 22, 2003, alleging wife failed to state a claim upon which relief can be granted. The trial court denied his demurrer at a May 16, 2003 hearing.

- 4 -

Husband filed an answer to wife's bill of complaint on May 19, 2003, and sought an award of spousal support without requesting a reservation, and made no request for equitable distribution. In his answer, husband again pled a failure to state a claim upon which relief could be granted. He also alleged that wife's grounds for divorce were fraudulent and misleading.

On May 23, 2003, husband requested *pendente lite* spousal support, stating that he was receiving unemployment benefits from the District of Columbia, his former employer, and requested a lump sum of $5,000 from wife to retain counsel, and $5,000 for support and maintenance. The trial court denied the motion.

On July 18, 2003, husband requested that sanctions be imposed pursuant to Code § 8.01-271.1 against wife and her attorneys because her bill of complaint was not well grounded in fact nor warranted by existing law. On December 27, 2003, husband filed his third motion to compel discovery and for sanctions, alleging that he was prejudiced by wife's failure to timely produce financial information. On January 7, 2004, at the final pretrial hearing on discovery, the trial court denied husband's motion to compel wife to respond to his two hundred forty-eight requests for admissions, ruling that the number of requests was excessive on its face. The trial court also required wife to comply with its previous order compelling the production of her resume. At the same hearing, the trial court reserved ruling on husband's motion to compel discovery and for sanctions, pending either party's demonstration of prejudice in the absence of wife's missing tax returns or credit card statements at trial.

The trial court awarded wife a final decree of divorce on the ground that the parties lived separate and apart, without any cohabitation and without interruption for a period in excess of one year from October 15, 1999, with an alternative date of October 21, 2001. The trial court denied husband's request for spousal support, denied his request for Code § 8.01-271.1 sanctions and discovery sanctions, and ordered him to pay $12,000 in attorney's fees to wife.

- 5 -

The trial court entered the final decree on February 12, 2004 with husband's exceptions attached, including his assertion that the trial court erred in failing to grant him a reservation of spousal support.[2]

### III.  SEPARATION DATE

Husband contends that the parties did not live separate and apart from the date of separation as required by Code § 20-91(A)(9)(a).  He argues that wife's hope for reconciliation, and the parties' "dating" relationship and sexual contact during the separation period, dictated a different result.  We disagree.

"A trial court's decision, when based on an *ore tenus* hearing, is entitled to great weight, and will not be disturbed unless plainly wrong or without evidence to support it."  Lanzalotti v. Lanzalotti, 41 Va. App. 550, 554, 586 S.E.2d 881, 882 (2003).  "The credibility of witnesses and the weight to be accorded their testimony is a matter within the sole province of the finder of fact."  Courembis v. Courembis, 43 Va. App. 18, 36, 595 S.E.2d 505, 514 (1999).

Code § 20-91(A)(9)(a) provides for a no-fault divorce "[o]n the application of either party if and when the husband and wife have lived separate and apart without any cohabitation and without interruption for one year."  The separation must be "coupled with an intention on the part of at least one of the parties to live separate and apart permanently, and [this] intention must be shown to have been present at the beginning" of the separation period.  Hooker v. Hooker, 215 Va. 415, 416, 211 S.E.2d 34, 36 (1975).  This is a "fact-based inquiry, requiring examination of all the circumstances before the court."  Bchara v. Bchara, 38 Va. App. 302, 310, 563 S.E.2d 398, 402 (2002).  Circumstances to be considered in making this determination include whether

---

[2] Twenty days after entry of the final decree, on March 4, 2004, husband filed a motion for reconsideration and to vacate and enter certain orders.  He requested equitable distribution and reservation of spousal support for the first time in this motion.  The trial court did not rule on the motion within twenty-one days of the filing of the final decree.  See Rule 1:1.  Husband noted his appeal on March 8, 2004.

sexual relations resumed, whether consortium was permanent or intermittent, whether the parties shared familial and financial responsibilities, and whether the parties resumed the normal relationship as husband and wife with the intent to permanently reconcile. See Jacobsen v. Jacobsen, 41 Va. App. 582, 590-91, 586 S.E.2d 896, 899 (2003); Hooker, 215 Va. at 416, 211 S.E.2d at 36; Rickman v. Commonwealth, 33 Va. App. 550, 558, 535 S.E.2d 187, 190 (2000); Bchara, 38 Va. App. at 310, 563 S.E.2d at 402. "The 'matrimonial cohabitation' consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship." Petachenko v. Petachenko, 232 Va. 296, 299, 350 S.E.2d 600, 602 (1986). "Mere casual cohabitation between the parties, after the separation, unaccompanied by resumption of normal married life . . . is not sufficient to show a reconciliation or an agreement to live and cohabit together again on a permanent basis as husband and wife." Roberts v. Pace, 193 Va. 156, 159, 67 S.E.2d 844, 846 (1951).

Properly viewed, the evidence supports the trial court's ruling that "wife's intent . . . was to permanently end the marriage" from the initial date of separation in 1999.[3] Wife testified that after husband moved out of the home, he sent an announcement of separation to her and at least one other family member. The parties never held themselves out as a couple during the separation period. She also testified that their family members, including husband's mother, knew that the couple was not living together. One of wife's witnesses, Sheila Harris-El, testified that wife intended the separation to be permanent at the time of separation. There is no evidence that the parties intended to permanently resume cohabitation, or that they resumed normal marital life. They acquired separate residences and financial lives following the separation on October 15, 1999. Wife purchased her own home, acquired her own credit cards, and they did

_____

[3] Additionally, we note that assuming there was some question as to the allegation of the first date of separation, it is uncontroverted that the parties were separated from October 21, 2001, over fourteen months before the filing of wife's bill of complaint on February 14, 2003.

not share funds or financial information. The parties' "dates" and sexual relations that began approximately six months after October 15, 1999 were sporadic and casual. Wife testified that they met "in an effort just to establish communication," and often went for weeks without contact. Contrary to husband's assertion, the parties' occasional sexual intercourse does not constitute cohabitation. See Petachenko, 232 Va. at 299, 350 S.E.2d at 602.[4] We therefore hold that the trial court did not err in determining the date of separation to be October 15, 1999, and granting wife a divorce on that basis.

## IV. SPOUSAL SUPPORT

Husband next contends the trial court erred in failing to grant his request for spousal support. On appeal, he raises numerous grounds for the error.[5] However he made no objection at the time of the trial court's denial of his request for support. When he noted his objections to the trial court's final decree, he objected only to the failure of the trial court to consider wife's "desertion" and the proper evaluation of the required Code § 20-107.1 factors.

---

[4] Husband also contends on appeal that the trial court erred in denying his request for sanctions pursuant to Code § 8.01-271.1. He argues that wife's assertion in her pleadings that the parties intended to remain separate and apart pursuant to Code § 20-91(A)(9)(a) was not well grounded in fact, and was fraudulent. However, our holding that the trial court properly awarded wife a final decree based on a properly pled date of separation, renders moot husband's contention that wife's pleadings were frivolous.

[5] Specifically, he argues the trial court failed to properly consider the requirements of Code § 20-107.1 in making its ruling. He first asserts that because the trial court erred in awarding the divorce decree based on the incorrect date of separation, it did not have the opportunity to consider the evidence following that date in deciding whether or not to award support. Second, he contends the trial court failed to make "written findings and conclusions of the court identifying the factors in subsection E which support the court's order denying spousal support," as required by Code § 20-107.1(F). And third, husband argues the trial court skipped the first step required by Code § 20-107.1(E) – the determination of *whether* to award spousal support – and instead went directly to a consideration of the factors required by Code § 20-107.1(E) to determine *the amount* of support, incorrectly employing this analysis in deciding *whether* to award support. He argues that before consideration of disparity of incomes, the trial court was required to "consider the circumstances and factors which contributed to the dissolution of marriage" in determining whether to award support, as required by Code § 20-107.1(E).

- 8 -

The trial court denied spousal support, finding as follows:

> There is indeed a disproportion in income, but that disproportion in income is not such as to cause this Court to award spousal support and therefore spousal support is denied either monthly or in installment [sic] or a lump sum basis. [Husband] does not have a need, if he's properly employed, working at one of the jobs he can do.

Husband made no objection at the time, and in response to the trial court's question, "What else do you need?" husband questioned only the court's failure to award sanctions and a "sequestration order." [6]

## V. RESERVATION OF RIGHT TO FUTURE SPOUSAL SUPPORT

At trial, husband requested an award of spousal support, but did not specifically request a reservation of the right to seek future spousal support until he filed his objections to the entry of the final decree. Nevertheless, he contends that the trial court erred in failing to grant him a reservation of the right to future support in the final decree of divorce. We agree.

Code § 20-107.1(D) provides, in pertinent part:

> In addition to or in lieu of an award pursuant to subsection C, the court may reserve the right of a party to receive support in the future. In any case in which the right to support is so reserved, there shall be a rebuttable presumption that the reservation will continue for a period equal to 50 percent of the length of time between the date of the marriage and the date of separation.

"[W]here there is no bar to the right of spousal support, it is reversible error for the trial court, upon request of either party, to fail to make a reservation in the decree of the right to receive spousal support in the event of a change of circumstances." Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1986).

---

[6] Rule 5A:18 states "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown . . . ." Husband made no objection at the time of the ruling as required by Rule 5A:18, and the ends of justice exception is not warranted. Therefore, we cannot consider this issue on appeal.

- 9 -

While husband did not explicitly request a reservation of the right to future spousal support in his answer, he did so in his exceptions filed with the trial court. See Vissicchio v. Vissichio, 27 Va. App. 240, 254, 498 S.E.2d 425, 432 (1998). Accordingly, we hold that it was error for the trial court to omit husband's right to a reservation of future support from the final decree.

## VI. ATTORNEY'S FEES

Husband next contends the trial court erred in awarding legal fees of $12,000 to wife. We review an award of attorney's fees for an abuse of discretion. See Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987).

The trial court found that husband was substantially responsible for "excessive driving up" of the legal costs by "threatening both wife and her lawyer with disbarment [sic]," and creating unnecessary litigation. Consequently, it awarded wife $12,000 in legal fees to be paid by husband.

Credible evidence supports the trial court's ruling. The trial court made specific findings concerning the award of attorney's fees, including that the litigation was disproportionately long despite the relative simplicity of the case and that husband "in good part is responsible for excessive driving up of everything that went on here including threatening both the wife and her lawyer with disbarment as a member of both the D.C. bar and Virginia bar," which created "unnecessary litigation." Accordingly, we cannot say the trial court abused its discretion in awarding attorney's fees to wife.

## VII. RECUSAL ON REMAND

Finally, appellant contends that we should order the recusal of the trial judge on remand due to his conduct at trial and his failure to rule on husband's post-trial motion for reconsideration.

"Decisions regarding a judge's impartiality are to be made by the judge in the exercise of his or her discretion, and will be reversed on appeal only upon a finding that the court abused its discretion in deciding the question." Scott v. Rutherfoord, 30 Va. App. 176, 189, 516 S.E.2d 225, 232 (1999). Because husband failed to raise this issue at trial and because no good cause otherwise exists for us to consider this issue, it is not properly before us. See Fox v. Fox, 41 Va. App. 88, 98, 581 S.E.2d 904, 909 (2003). We therefore do not consider this issue on appeal.

Accordingly, we affirm in part, and reverse solely for the purpose of addressing husband's request for a reservation of the right to future spousal support.

Affirmed, in part,
reversed, in part,
and remanded.
