COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Chief Judge Decker, Judges AtLee and Friedman
Argued at Fredericksburg, Virginia


MOHSEN A. YAZDI

                                                          MEMORANDUM OPINION* BY
v.        Record No. 0622-22-4                       JUDGE RICHARD Y. ATLEE, JR.
                                                               MARCH 21, 2023
MARYAM DAREI


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                    Christie A. Leary, Judge

          Fred M. Rejali for appellant.

          Melanie Hubbard (Malinowski Hubbard, PLLC, on brief), for
          appellee.


        The circuit court awarded Maryam Darei ("wife")[1] a divorce from Mohsen A. Yazdi

("husband") on the grounds of cruelty.  On appeal, husband argues that the circuit court erred by

granting wife a divorce on the grounds of cruelty based on her "uncorroborated testimony" and by

awarding her $4,000 in monthly spousal support.  For the foregoing reasons, we affirm the

judgment of the circuit court.

                                      I. BACKGROUND

        We view the evidence in the light most favorable to wife, as the prevailing party below,

granting to her the benefit of any reasonable inferences.  *Shah v. Shah*, 70 Va. App. 588, 591

(2019).

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413.

        [1] We recognize that "former husband" and "former wife" are more accurate designations,
but we use less cumbersome titles in this memorandum opinion for ease of reference.

The parties married in Iran on June 20, 2009. At the time of their marriage, both parties had undergraduate degrees from Azad University in Tehran, Iran.[2] While living in Iran, both parties worked and reportedly had a "real high" standard of living.

After they married, the parties formed an advertising company with one of their friends. Wife worked as the company's graphic designer, and husband handled the company's financial-related matters. In 2010, husband "got mad" at wife over a business decision that she and their business partner made over his objection. He hit wife, pushed her to the floor, and stepped on her hands. Husband later apologized to wife and promised her that he would not hurt her again.

After the 2010 incident, the parties discussed moving to the United States to pursue further education and employment. Husband moved to Virginia in 2015 to find a job and "prepare . . . for [their] lives" in the United States. Wife followed husband to Virginia in January 2016. Thereafter, wife gave birth to their child and took care of the child full-time while husband worked.

After their child was born, husband "became controlling" with respect to wife's choice of clothing and "monitored [her] social accounts" and emails. In November 2019, wife hid the child's passports from husband.[3] Upon discovering that wife had hidden the passports, husband "put his hands [on her] neck . . . really tight" and told her that he could kill her "like a dog" and nobody would know. Then, while holding wife's phone and laughing, husband told wife to "call to the police if you can." Wife chose not to call the police because husband told her that, if she did, the police would take the child away and she would "never see [the child] again." After the November 2019 incident, wife asked husband to leave their home, and he refused. Wife nevertheless continued to stay with husband because she did not have any money or family in the area.

---

[2] At some point, husband also received a master's degree in business administration.

[3] Wife testified that she was afraid that husband would take the child to Iran and prevent her from seeing the child.

In May 2020, wife discovered a voice recorder in their apartment, which had recorded her conversations with other people when husband was not present. Then in June 2020, husband accused wife of stealing some of their household items in front of the child, at which point wife called a friend to pick her and the child up from their apartment. As wife was preparing to leave, husband grabbed the child, began to record wife with his phone, and accused her of "want[ing] to kidnap [their] daughter." Wife then took the child from husband and tried to leave. Before she could do so, husband pushed wife back and "grabbed [her] arms really tight." Husband continued to push wife "back again and again" until he "suddenly" allowed her and the child to leave. Thereafter, wife ceased living with husband.

On June 22, 2020, husband was arrested and charged with assault and battery of wife in violation of Code § 18.2-57.2. On July 10, 2020, the Fairfax County Juvenile and Domestic Relations District Court ("JDR court") entered a one-year protective order prohibiting husband from having any contact with wife. Husband ultimately pled guilty to the assault and battery charge. The JDR court deferred adjudication, placed him on probation for six months, and entered another protective order.

On August 17, 2020, wife filed for divorce in the circuit court requesting a divorce on the grounds of cruelty. She also requested sole legal and primary physical custody of the child, permanent child and spousal support, equitable distribution of the parties' assets, and an award of attorney fees and costs. The parties settled all issues pertaining to custody, visitation, and equitable distribution before trial. They further stipulated that wife had no income and husband had an annual salary of $115,000. The divorce case proceeded to trial on March 1, 2022, to adjudicate the grounds of divorce, spousal support, and attorney fees.

At trial, wife testified about husband's "controlling" behavior and the incidents in 2010, 2019, and 2020 when he was physically violent with her. She also introduced copies of the JDR court's orders in connection with the June 2020 incident.

As to her request for spousal support, wife introduced a monthly income and expense statement showing that she had no income and that her monthly expenses totaled $3,943. Wife testified that she was unemployed despite applying for several jobs. She explained that her ability to speak English was "awful" and she "need[ed] to be a fluent speaker in English" to "continue living in this country" and interview for jobs. She began to study English "the day after" she separated from husband, and she began to pursue a master's degree in computer science because "[t]here are many job positions in [that] career." Wife estimated that she could complete her master's degree by Fall 2023 and asked the circuit court to award her two years of spousal support to enable her to complete her master's degree and find employment.

During cross-examination, wife admitted that she had a dowry of five hundred gold coins in Iran and that she had started the process to recover her dowry in November 2019. But she explained that she did not know the value of it and that recovering it was "a really long process."

During his case-in-chief, husband denied physically assaulting wife or trying to control her. He testified that, after he moved to the United States, he worked "low income jobs" until March 2020, when he got a good job for the first time. He further testified that he had been paying wife $2,383 in spousal support and $650 in child support each month and that he did not "have enough money to survive." He explained that his rent payment, with utilities, was $2,500 per month. He also testified that he had borrowed approximately $10,000 from a charitable foundation before the parties separated. After he separated from wife, he borrowed additional funds from the charity, which increased his debt to $100,000. According to husband, he "returned some of [the loan]," which had a balance of $72,260 at the time of the hearing. Husband admitted that he had not been

repaying the loan and claimed that the charity sent him a letter scheduling him to pay $2,125 per month beginning in March 2022. He did not introduce a copy of the letter nor any documentary evidence in support of his claim that he had borrowed money from the foundation.

Husband also introduced testimony from a vocational rehabilitation counselor, who qualified as an expert and opined that wife was "very bright" and had a degree in computer engineering, but that "her time away from that work . . . limit[ed] her employability severely." The vocational expert testified that wife would "need to upgrade her skills" to return to "computer science work" and estimated that "[i]f she took four months of training in Java, full-time . . . she should upgrade her skills adequately." The vocational expert continued that he would then "give [wife] a three-month job search . . . to find employment" and that wife could earn an annual salary of $60,000. The vocational expert conceded that at the time of the circuit court hearing, wife was not qualified for any specific jobs because of her lack of skills.

In closing, wife argued that the circuit court should not impute income to her because the vocational expert failed "to show a job that [she] could apply to and that she would be able to get." She further pointed that "[i]t took [husband] five years to get himself to a position to have a good income." Wife asked the court to award her the guideline support so that she could have "the opportunity to be able to earn enough to live in this environment." With respect to the grounds of divorce, wife argued that the criminal warrant and two protective orders corroborated her testimony as to husband's cruelty.

In his closing argument, husband asked the circuit court to impute income to wife and argued that if wife had taken the steps recommended by the vocational expert "in the beginning of 2021," she could have had a job which paid $60,000 "a year ago." He further argued that he was "bankrupt" because he had to pay for both parties' living expenses and his loan. Husband also argued that there was no evidence to corroborate the alleged cruelty as grounds for divorce.

After considering the evidence and arguments of the parties, the circuit court granted wife a divorce on the grounds of cruelty and awarded her $4,000 per month in spousal support for a period of two years along with a two-year reservation. Although the circuit court acknowledged that husband had "incurred debts to meet his expenses," it found that its spousal support award was appropriate "taking into account where the parties are with respect to being able to support themselves." The circuit court further found that wife had "contribute[d] to the non-monetary needs of the family once the family moved here to the United States" while husband "was able to continue working" and "attain a position that was consistent with what his education background was."

In declining to impute income to wife, the circuit court stated that it "was persuaded by the fact that [husband] has had to work very hard over the last few years in order to . . . attain a job that is in the background that he originally received education for" during which time wife supported him "with respect to any training education that he required." The circuit court stated that it was "partially persuaded by [husband's] vocational expert" who opined that wife "wasn't currently employable" and noted that wife was "actually taking [the] kinds of steps" recommended by the expert. The circuit court concluded that its spousal support award gave wife "the best chance of meeting her very reasonable expenses for the limited duration that she is requesting."

Husband objected to the amount of spousal support awarded because it constituted "a majority of his income." The circuit court responded that the award was for "a very limited duration in comparison to the life of this marriage." Husband now appeals to this Court.

## II. ANALYSIS

On appeal, husband argues that the circuit court erred by granting wife a divorce on the grounds of cruelty based on her "uncorroborated testimony" and by awarding wife $4,000 in monthly spousal support. We disagree.

## A. Grounds of Divorce

"On appellate review, a divorce decree is presumed correct and will not be overturned if supported by substantial, competent, and credible evidence." *Gottlieb v. Gottlieb*, 19 Va. App. 77, 83 (1994). "As the [circuit] court heard evidence *ore tenus*, [its] factual findings will not be disturbed unless plainly wrong or without evidential support." *Bchara v. Bchara*, 38 Va. App. 302, 309 (2002).

Husband argues that the circuit court erred by granting wife a divorce on the grounds of cruelty based on her "uncorroborated testimony."[4] He contends that wife failed to introduce any evidence, such as photographs of "marks or bruises," corroborating her testimony that he physically assaulted her in 2010, 2019, or 2020. He also argues that the JDR court's protective orders were "issued without any supporting evidence" and were also based on wife's uncorroborated testimony.

"[T]he public policy of Virginia requires that before a spouse may obtain a divorce, he or she must prove the grounds therefor and no complaint for divorce shall be defaulted, taken for confessed, or granted upon the pleadings or upon uncorroborated testimony." *Cruz v. Cruz*, 62 Va. App. 31, 34 (2013) (quoting *Clark v. Clark*, 11 Va. App. 286, 296 (1990)); *see also* Code § 20-99(1) (providing that "[e]xcept for a divorce granted on the grounds set forth in subdivision A (9) of § 20-91, no divorce . . . shall be granted on the uncorroborated testimony of the parties or either of them"). The "main object" of requiring corroboration "is to prevent collusion." *Graves v. Graves*, 193 Va. 659, 662 (1952).

---

[4] Husband does not challenge whether wife's testimony, if corroborated, was sufficient to support the circuit court's finding of cruelty. To the contrary, he concedes that "[w]ife claimed three instances of cruelty." Accordingly, we do not address whether husband's actions constituted cruelty under Code § 20-91(6), but rather only whether wife's testimony regarding his actions was sufficiently corroborated. *See Bethea v. Commonwealth*, 297 Va. 730, 755 (2019) ("When an appellant 'fails to assign error to a particular holding,' we treat it as 'binding on appeal.'" (quoting *Egan v. Butler*, 290 Va. 62, 79 (2015))).

"The question of corroboration is one of fact, the decision of which in each case depends upon the peculiar facts of that particular case." *Id.* at 661. "Where it is apparent that there is no collusion, the corroboration needs to be only slight." *Id.* at 662. Furthermore, "[e]very element or essential charge need not be corroborated, nor must the corroborating evidence, standing alone, prove the grounds for divorce, but corroboration must give sufficient strength to the complainant's testimony to be clearly worthy of belief." *Bchara*, 38 Va. App. at 312 (quoting *Emrich v. Emrich*, 9 Va. App. 288, 296 (1989)).

In this case, there was no evidence of collusion between the parties. Thus, wife needed to provide only slight corroboration to support her testimony. The record reflects that husband pled guilty to assaulting wife on June 22, 2020, the date on which the parties separated. The JDR court also entered two protective orders against husband because of the June 2020 incident. *See King v. King*, No. 2066-14-4 (Va. Ct. App. Nov. 24, 2015) (finding that a conviction order and protective order were sufficient corroboration of testimony to support divorce on grounds of cruelty).[5]

Although husband claims on appeal that he pleaded guilty to assault and battery against wife to take "responsibility for his actions [of] blocking the door" and that the protective orders were based solely on wife's testimony, he did not offer any testimony or evidence to support his claims at the divorce hearing. Accordingly, husband's guilty plea and the protective orders, entered by the JDR court both before and after his guilty plea, were sufficient to provide the slight corroboration necessary to render wife's testimony regarding the June 2020 incident "clearly worthy of belief." *See Bchara*, 38 Va. App. at 312 (quoting *Emrich*, 9 Va. App. at 296).

---

[5] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Blowe v. Commonwealth*, 72 Va. App. 457, 468 n.10 (2020) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)).

Therefore, we hold that the circuit court did not err by awarding wife a divorce on the grounds of cruelty.

## B. Spousal Support

Husband contends that the circuit court abused its discretion by awarding wife $4,000 per month in spousal support. We disagree.

"The trial court has '"broad discretion in setting spousal support and its determination will not be disturbed except for a clear abuse of discretion."'" *Wyatt v. Wyatt*, 70 Va. App. 716, 719 (2019) (quoting *Giraldi v. Giraldi*, 64 Va. App. 676, 681 (2015)). "In determining the appropriate amount of spousal support, the trial court must consider the needs of the requesting party and the other spouse's ability to pay." *Id.* (quoting *Alphin v. Alphin*, 15 Va. App. 395, 401 (1992)). In addition, "[i]n determining the nature, amount and duration of an award," the trial court must consider the factors set forth by Code § 20-107.1(E). The trial court, however, "is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" *Pilati v. Pilati*, 59 Va. App. 176, 183 (2011) (quoting *Duva v. Duva*, 55 Va. App. 286, 300 (2009)). "What weight, if any, to assign to this [or that] factor in the overall decision lies within the trial court's sound discretion." *Id.* (alteration in original) (quoting *Robbins v. Robbins*, 48 Va. App. 466, 481 (2006)).

Husband contends that the circuit court erred by failing to consider the factors set forth by Code § 20-107.1(E). He first argues that the circuit court failed to consider his "ability to pay" the spousal support award and that the award "represents a majority of [husband's] net income." In essence, husband argues that he is unable to pay the spousal support award.[6]

---

[6] In support of this argument on appeal, husband relies in part upon his paystubs which he filed in advance of the circuit court's *pendente lite* hearing. The record does not reflect that husband introduced his paystubs at trial or that the circuit court considered them in determining spousal support. Accordingly, we do not consider husband's paystubs in determining whether the circuit court abused its discretion by awarding wife spousal support at the final hearing.

The record reflects that the circuit court found that husband had the ability to pay the spousal support award. Indeed, the circuit court entered the award notwithstanding its acknowledgment that husband had "incurred debts to meet his expenses," his objection that the award constituted "a majority of his income," and his claim to being "bankrupt." It was in the province of the circuit court as the trier of fact to determine what weight to afford the evidence husband presented. *See Anderson v. Anderson*, 29 Va. App. 673, 686 (1999) ("It is well established that the trier of fact ascertains a witness'[s] credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness'[s] testimony." (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc)). Considering the parties' stipulation with respect to husband's income, the expenses husband presented at trial, and the circuit court's discretion in considering husband's testimony, the circuit court did not clearly abuse its discretion by finding that husband had the ability to pay the spousal support award.

Husband next argues that the circuit court failed to consider wife's financial resources, primarily her dowry, "which is available to her in Iran." Neither party, however, introduced any evidence as to the value of wife's dowry. Moreover, wife testified that recovering the dowry was "a really long process" that would take "maybe more than two years." "In setting a spousal support award, trial courts 'must look to current circumstances and what the circumstances will be "within the immediate or reasonably foreseeable future."'" *Dailey v. Dailey*, 59 Va. App. 734, 740 (2012) (quoting *Srinivasan v. Srinivasan*, 10 Va. App. 728, 735 (1990)). "Trial courts, however, are not required to anticipate everything that 'may happen in the future.'" *Id.* (quoting *Srinivasan*, 10 Va. App. at 735). Given the lack of evidence regarding the value of wife's dowry and when, or even if, she would receive it, the circuit court did not abuse its discretion by finding that the dowry was not relevant to its spousal support award.

Next, husband contends that the circuit court abused its discretion by failing to consider the parties' standard of living. He argues that the "court failed to consider eleven years of marriage during which the [parties] struggled in Iran." Contrary to husband's argument, wife testified that the parties had a "real high" standard of living while they lived in Iran. In light of wife's testimony, the circuit court did not abuse its discretion by finding that the parties had a "modest" standard of living, which provided for a "good home with modest expenses."

In his final argument, husband argues that the circuit court abused its discretion by failing to account for wife's earning capacity. He contends that wife "chose not to work" and is voluntarily unemployed. Furthermore, he contends that the circuit court erred because it "did not consider or give any weight to the testimony" of his vocational expert, who testified that wife could obtain a job after four months of training and a three-month job search.

"The decision to impute income is within the sound discretion of the trial court and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence." *Collins v. Leeds*, 69 Va. App. 1, 9 (2018) (quoting *McKee v. McKee*, 52 Va. App. 482, 489 (2008) (en banc)). As the party seeking to have income imputed to wife, husband was "required to present evidence 'sufficient to enable the trial judge [to] reasonably . . . project what amount [of income] could be anticipated.'" *Id.* (third alteration in original) (quoting *McKee*, 52 Va. App. at 489).

Here, the circuit court did consider the vocational expert's testimony, expressly noting that it was partially persuaded by husband's vocational expert. The vocational expert testified that wife was not employable at the time of trial. The circuit court also found that wife was "actually taking [the] kinds of steps" recommended by the expert and that it had taken husband a "few years in order to . . . attain a job that is in the background that he originally received education for" during which time wife supported him "with respect to any training education that he required." Moreover, contrary to husband's claim that wife was voluntarily unemployed, the record reflects that wife had

- 11 -

unsuccessfully applied for various job positions after she separated from husband. "The 'credibility of the expert witness and the weight to be accorded the evidence' is a matter exclusively in the province of the factfinder . . . and is not ordinarily subject to appellate review." *deCamp v. deCamp*, 64 Va. App. 137, 155 (2014) (quoting *Lemond v. Commonwealth*, 19 Va. App. 687, 694 (1995)). Given the circuit court's discretion in weighing husband's vocational expert's testimony and the circumstances of this case, the circuit court was not plainly wrong in declining to impute income to wife.

The record in this case demonstrates that the circuit court considered the factors set forth by Code § 20-107.1 in awarding wife spousal support and that its findings were supported by the evidence. As the circuit court did not clearly abuse its discretion by awarding wife $4,000 in monthly spousal support, we affirm its judgment.

### C. Appellate Attorney Fees

Wife requests that this Court award her appellate attorney fees given "the ample evidence in the record supporting" the circuit court's award of spousal support, the frivolous nature of husband's appeal, and her unemployment. "This Court has discretion to grant or deny attorney's fees incurred on appeal." *Stark v. Dinarany*, 73 Va. App. 733, 757 (2021). "In making such a determination, the Court considers all the equities of the case." *Id.*; *see* Rule 5A:30(b)(3). Having reviewed and considered the entire record in this case, we deny wife's request for attorney fees.

### III. CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*