COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Willis and Elder
Argued at Salem, Virginia


JAMES EDWARD RICKMAN
                                         OPINION BY
v.   Record No. 2265-99-3        JUDGE LARRY G. ELDER
                                      OCTOBER 10, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                 Diane McQ. Strickland, Judge

        Thomas P. Lloyd for appellant.

        Shelly R. James, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


     James Edward Rickman (appellant) appeals from his bench

trial conviction for assault and battery against a family or

household member in violation of Code § 18.2-57.2, his third

such conviction within ten years, making it punishable as a

Class 6 felony.  On appeal, appellant contends the evidence was

insufficient to establish the woman he was convicted of

assaulting and battering was a "family or household member"

within the meaning of the statute.  We hold the evidence was

sufficient to bring appellant's victim within the statutory

definition, and we affirm his conviction.

## BACKGROUND

On March 13, 1999, appellant "hit" and "smacked" Yvonne Brickey, "jerked [her] shirt," and pushed her to the ground.

According to Brickey, appellant was residing with her on the date of the offense, and they had resided together for "a couple months." Appellant repeatedly told one of the officers who responded to the scene that he and Brickey "had lived together for about three months." Appellant worked out of town on an intermittent basis and stayed with Brickey "off and on, when [he] would come into town." Although Brickey testified that appellant sometimes stayed with her and sometimes stayed with his ex-wife, appellant testified that he and his wife were not "living together" during March 1999 and that some of his furniture was in storage. Brickey said she and appellant started living together in this "off and on" fashion "a long time ago."

Other evidence established that when appellant was in Brickey's home, she and appellant were "boyfriend and girlfriend," slept in the same bed and had sexual relations. Although Brickey would not take money appellant offered her for living expenses, appellant bought food and "tried to just help out." While appellant was at Brickey's, he stored clothes and other items of personal property there. Brickey's mother, who lived next door to Brickey, washed appellant's clothes for him,

and appellant used the telephone at Brickey's mother's home because Brickey did not have a phone.

Appellant admitted to staying with Brickey "off and on" but said he did not reside there. He considered the trailer he and his wife owned as his residence during that time but admitted he was not actually living there. He said that most of the time he was in town, he stayed with his cousin Wanda, but he admitted that both his wife and Brickey also would come to Wanda's to stay. He denied having a contemporaneous sexual relationship with Brickey but admitted the March 13 altercation arose because Brickey became jealous when her daughter told her appellant had been out with a younger woman. Appellant said Brickey's daughter, a minor, became angry with him when he asked her and her friends not to consume alcohol or use illegal drugs in the house.

Appellant moved to strike at the close of the Commonwealth's evidence and again at the close of all the evidence. In denying the motions, the trial court made the following observations:

> It is the finding of this Court that [appellant] was as much a member of the household where Ms. Brickey resides as he was of any household.
>     . . . [C]ertainly, the intent of the General Assembly in passing this legislation was to cover circumstances such as this where he was residing [in even an] on again and off again relationship with Ms. Brickey . . . .

The court found, in addition, the evidence was sufficient to prove that appellant assaulted and battered Brickey, a household member, and that he had two previous convictions for the same offense. It convicted him of a Class 6 felony pursuant to Code § 18.2-57.2(B).

## II.

## ANALYSIS

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The fact finder is not required to believe all aspects of a witness' testimony; it may accept some parts as believable and reject other parts as implausible. See Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).

The version of Code § 18.2-57.2 applicable to these proceedings provided as follows:

> A. Any person who commits an assault and battery against a family or household member shall be guilty of a Class 1 misdemeanor.
> B. On a third or subsequent conviction for assault and battery against a family or household member, where it is alleged in the warrant, information, or indictment on which a person is convicted, that (i) such person has been previously convicted twice of assault and battery against a family or household member . . . within ten years of the third or subsequent offense, and . . .

> (ii) each such assault and battery occurred
> on different dates, such person shall be
> guilty of a Class 6 felony.
>
>    \*     \*     \*     \*     \*     \*     \*
>
>    D. <u>As used in this section, "family or
> household member" means . . . (vi) any
> individual who cohabits or who, within the
> previous twelve months, cohabited with the
> defendant</u> . . . .

Code § 18.2-57.2 (1995 Repl. Vol. (version effective July 1,

1997)) (emphasis added).

What constitutes cohabiting under Code § 18.2-57.2 is a

question of first impression in Virginia.  "[W]e construe a

statute to promote the end for which it was enacted, if such an

interpretation can reasonably be made from the language used."

<u>Woolfolk v. Commonwealth</u>, 18 Va. App. 840, 847, 447 S.E.2d 530,

533 (1994).  "The plain, obvious, and rational meaning of a

statute is always preferred to any curious, narrow or strained

construction."  <u>Branch v. Commonwealth</u>, 14 Va. App. 836, 839,

419 S.E.2d 422, 424 (1992).  "Although penal laws are to be

construed strictly [against the Commonwealth], they 'ought not

to be construed so strictly as to defeat the obvious intent of

the legislature.'"  <u>Willis v. Commonwealth</u>, 10 Va. App. 430,

441, 393 S.E.2d 405, 411 (1990) (citation omitted).

Our prior consideration of the meaning of the term

"cohabitation" has been limited mainly to the civil arena in the

context of divorce and spousal support.  Interpreting a property

settlement agreement in <u>Schweider v. Schweider</u>, 243 Va. 245, 415

S.E.2d 135 (1992), the Virginia Supreme Court noted that, "[w]hile engaging in sexual relations is a factor in determining cohabitation, '"matrimonial cohabitation" consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship.'" Id. at 248, 415 S.E.2d at 137 (quoting Petachenko v. Petachenko, 232 Va. 296, 299, 350 S.E.2d 600, 602 (1986)).

We revisited this issue in Frey v. Frey, 14 Va. App. 270, 416 S.E.2d 40 (1992), noting that financial support is "a factor which tends to prove the assumption of duties or obligations attendant to marriage" but that "other factors exclusive of support may be sufficient to establish that a relationship is analogous to marriage." Id. at 275, 416 S.E.2d at 43. We acknowledged the holding of the Supreme Court in Schweider that phrases such as "cohabitation, analogous to marriage," have been "consistently interpreted . . . as encompassing both a permanency or continuity and an assumption of marital duties." Id.

Appellant contends these principles are applicable to his conviction for domestic assault and battery and preclude a finding that he cohabited with Brickey because the evidence failed to establish the necessary permanence or any other characteristics of a marital relationship or common law marriage. Although we find Schweider and Frey instructive, we

disagree that they control our interpretation of Code
§ 18.2-57.2.  While we look to these interpretations for
guidance, we are not bound by them because "'cohabitation' takes
on different meanings in different contexts."  State v. Yaden,
692 N.E.2d 1097, 1100 (Ohio Ct. App. 1997); see also Elizabeth
Trainor, Annotation, "Cohabitation" For Purposes of Domestic
Violence Statutes, 71 A.L.R.5th 285, 294 (1999).  Compare Colley
v. Colley, 204 Va. 225, 228-29, 129 S.E.2d 630, 632-33 (1963)
(under divorce jurisdiction statute, construing "cohabiting" to
mean "having dwelled together under the same roof with more or
less permanency"), with Tarr v. Tarr, 184 Va. 443, 448, 35
S.E.2d 401, 403-04 (1945) (in assessing what acts amount to
condonation of adultery, construing "cohabiting" to mean "single
voluntary act of sexual intercourse").

We also seek guidance from the interpretations other courts
have given "cohabitation" in the domestic abuse context.  These
courts acknowledge the obvious conclusion of their legislatures
that "assault involving a family or household member deserves
further protection than assault on a stranger."  See, e.g.,
State v. Williams, 683 N.E.2d 1126, 1129 (Ohio 1997).  In
Virginia, the legislature also has concluded that assault on a
family or household member is more serious than assault on a
stranger.  See Code §§ 18.2-57, 18.2-57.2.[1]

---

[1] Although the first and second offenses of assault and
battery of a family or household member are punished as Class 1

In surveying the varying definitions of cohabitation in this context, the Ohio Supreme Court noted the prevailing view that "domestic violence arises out of the nature of the relationship itself, rather than the exact living circumstances of the victim and perpetrator."  Williams, 683 N.E.2d at 1129.

> [T]he essential elements of "cohabitation"
> are (1) sharing of familial or financial
> responsibilities and (2) consortium.
> Possible factors establishing shared
> familial or financial responsibilities might
> include provisions for shelter, food,
> clothing, utilities, and/or commingled
> assets.  Factors that might establish
> consortium include mutual respect, fidelity,
> affection, society, cooperation, solace,
> comfort, aid of each other, friendship, and
> conjugal relations.

Id. at 1130 (citations omitted).

Other factors appropriate for consideration include the length and continuity of the relationship.  See, e.g., State v. Kellogg, 542 N.W.2d 514, 518 (Iowa 1996).  Although "a person may have only one legal domicile at one time, . . . he may have more than one residence" for purposes of a statute proscribing domestic assault.  State v. Archuletta, 946 P.2d 620, 622 (Haw. Ct. App. 1997).

> [A] defendant may cohabit simultaneously
> with two or more people at different
> locations, during the same time frame, if he

misdemeanors in Virginia--the same punishment imposed for assault and battery on a non-family member who does not belong to any other special class--a third offense for assault and battery of a family or household member within ten years is subject to heightened punishment as a Class 6 felony.  See Code §§ 18.2-57, 18.2-57.2.

> maintains substantial ongoing relationships
> with each and lives with each for
> significant periods. A defendant who
> physically abuses a cohabitant cannot
> immunize himself from criminal liability
> merely by living part-time elsewhere with
> one or more other persons while continuing
> to reside the rest of the time with the
> first partner and maintaining a substantial
> relationship with that person.

People v. Moore, 52 Cal. Rptr. 2d 256, 264 (Cal. Ct. App. 1996).

The factors to be applied "are unique to each case and how much

weight, if any, to give to each of these factors must be decided

on a case-by-case basis by the trier of fact." Williams, 683

N.E.2d at 1130 (emphasis added); see Kellogg, 542 N.W.2d at 518.

In construing Code § 18.2-57.2 to achieve the obvious

intent of the legislature, we apply these same factors to a

totality-of-the-circumstances analysis in appellant's case.

Under this analysis, we hold the evidence supports the trial

court's finding that appellant and Brickey cohabited as that

term is used in Code § 18.2-57.2. Under the first prong of the

Ohio Supreme Court's test, the sharing of familial or financial

responsibilities, the evidence established that appellant

desired to contribute money to cover a portion of Brickey's

household expenses and gave her grocery money whenever he stayed

at the residence. Brickey's mother, who lived next door, washed

appellant's laundry and allowed appellant to use her phone.

Appellant also felt comfortable enough in Brickey's home to ask

her daughter, a minor, not to consume alcohol or illegal drugs in Brickey's house.

Under the second prong, consortium, the evidence supported a finding that Brickey and appellant slept in the same bed and had a sexual relationship. Although appellant insisted their relationship was platonic, he admitted they were very close and said they fought because Brickey thought he had been out with a younger woman and became jealous.

Finally, in addressing the duration, continuity and permanency of the relationship, as the holdings in Schweider and Frey suggest we should, see also Kellogg, 542 N.W.2d at 518, the evidence, viewed in the light most favorable to the Commonwealth, supported a finding that appellant had resided with Brickey continuously for three months prior to March 13, 1999 and that he had stayed with her sporadically before that for "a long time," as well. Although appellant said he remained married to another woman, he reported that some of his furniture was in storage and that he was not living with his wife during that period of time. Based on this evidence, the trial court concluded that appellant "was as much a member of the [victim's] household . . . as he was of any household" and that this was sufficient to establish cohabitation under Code § 18.2-57.2. We agree and hold the fact that appellant sometimes worked out of town and may periodically have stayed elsewhere when in town did not preclude a finding that he cohabited with Brickey. See

_Archuletta_, 946 P.2d at 622.  The evidence supported the trial court's implicit finding that appellant maintained a "substantial ongoing relationship[]" with Brickey during this period of time.  _Moore_, 52 Cal. Rptr. 2d at 264.

   For these reasons, we hold the evidence of cohabitation was sufficient to support appellant's conviction under Code § 18.2-57.2.  Therefore, we affirm the conviction.

                                                    _Affirmed._