## CIRCUIT COURT OF FAIRFAX COUNTY

Thomas H. Catalano

v.

Susan Catalano

April 28, 2005

Case No. (Chancery) 2004-191537

BY JUDGE LESLIE M. ALDEN

The matter came before the Court on the Defendant's Exceptions to the Commissioner's Report, the Complainant's Opposition thereto, and the argument of Counsel. The Court took the matter under advisement and has now had an opportunity to review the Transcript of the Commissioner's Hearing and the Report of the Commissioner. At issue is the determination of whether the parties were living separate and apart under one roof so as to satisfy the legal separation period to be entitled to a divorce. For the reasons set forth, the Court sustains the Exceptions.

The Commissioner, in his Report at page 3, concluded that the parties separated under the same roof commencing on August 12, 2003, and continuing until Mr. Catalano physically moved from the former marital residence upon its sale on or about June 14, 2004. The report of a commissioner in chancery should be sustained unless the Court concludes that the findings are not supported by the evidence. *Strauss v. Princess Anne Marine*, 209 Va. 217, 163 S.E.2d 198 (1968). This rule is not applicable to pure conclusions of law contained in the report. *Sterling v. Trust Co.*, 149 Va. 867, 876, 141 S.E. 856 (1928). Here, the Commissioner's conclusion that the parties' separation was legally sufficient was a conclusion of law rather than a finding of fact.

Va. Code § 20-91(A)(9)(a) provides that a divorce may be granted "on the application of either party if and when the husband and wife have lived separate and apart without any cohabitation and without interruption for one year." The statute requires that there be proof of an intention on the part of at least one of the parties to discontinue permanently the marital cohabitation, followed by physical separation for the statutory period. *Hooker v. Hooker*, 215 Va. 415, 417, 211 S.E.2d 34 (1975). Determination of whether and when the parties have lived separate and apart without cohabitation is a fact-based inquiry, requiring an examination of all the circumstances before the court. *Bchara v. Bchara*, 38 Va. App. 302, 310, 563 S.E.2d 398 (2002). Virginia has defined "cohabit" as meaning "to live together in the same house as married persons live together, or in the manner of husband and wife." *Johnson v. Commonwealth*, 152 Va. 965, 970, 146 S.E. 289 (1929). Matrimonial cohabitation consists of more than sexual relations. It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship. *Petachenko v. Petachenko*, 232 Va. 296, 299, 350 S.E.2d 600 (1986). The Court of Appeals has said that essential elements of cohabitation are (1) sharing of familial or financial responsibilities and (2) consortium. Factors that might establish the former are provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish the latter are mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid, friendship, and conjugal relations. *Rickman v. Commonwealth*, 33 Va. App. 550, 557, 535 S.E.2d 187 (2000).

The evidence before the commissioner showed that the parties had discussed separation at various times throughout the 29 year marriage, and had on at least one occasion lived in separate residences. In and around August 2003, the parties were again discussing their relationship and a possible separation. Although Ms. Catalano considered placing a contract on another home, she did not do so. She did, however, on or about August 12, 2003, move out of the marital bedroom upon learning that Mr. Catalano had divided one of the marital bank accounts. She did leave some clothes in the bedroom, and did return to that room, cleaned that room, and indeed, slept in that room on several days during two occasions when other family members were staying with the Catalanos in the marital residence. However, the parties agree that they did not engage in sexual relations during these occasions, and had not done so since August 2001.

Although Mr. Catalano expressed to co-workers and some family members that he was separated from his wife, he continued to host and

attend family gatherings with his wife, as well as to attend various church services and numerous and varied other social functions with her until he moved out of the marital home. In short, the parties continued to hold themselves out as a couple. The parties continued to take some meals together, and the family went out to dinner once a week. Throughout the period, Ms. Catalano continued to do the cooking and shopping for the family, cleaning of the dishes, house, and laundry. Mr. Catalano continued to support financially the family activities. Periodically, Ms. Catalano specifically attended to Mr. Catalano's needs and comforts. Neither party testified that he or she was prohibited from moving out of the marital home as a result of economic or financial constraints.

The parties met for lunch at a restaurant in Arlington on September 26 to discuss the status of their marriage. Although Mr. Catalano contends that he formed the intent to separate on August 12, he concedes that he and his wife were still discussing at this luncheon whether they could remain in one house, given the ongoing tensions between them. The parties discussed how to handle their relationship in a way that would cause the least trauma and stress on the children and on the family as a whole. According to Mr. Catalano, at this meeting, the parties agreed that they would be separate and apart "in the same house" until the house was sold at the end of the school year. According to Ms. Catalano, the parties agreed that they would stay together for the sake of the children until the end of the school year. Ms. Catalano specifically rejected the idea of entering into a proposed property settlement agreement to establish a date of separation before they actually moved out of the house.

The Court concludes from the testimony regarding this meeting that Mr. Catalano intended to establish a separation date that preceded the parties' sale of the marital home; Ms. Catalano did not so intend. However, Mr. Catalano's intent to end the marriage must be coupled with the act of physically separating in order to come within the definition in the statute. Upon a review of all the evidence regarding the circumstances of this case, the Court concludes that although the parties slept in separate bedrooms, they did not live physically separate and apart, without cohabitation, while they remained under one roof.

The cases relied upon by Mr. Catalano are distinguishable. In *Jamison v. Jamison*, 3 Va. App. 644, 352 S.E.2d 719 (1987), the evidence demonstrated that the wife had willfully breached and neglected significant marital duties, and had practically destroyed the home life, rendering the marriage intolerable. In *Bchara, supra*, the evidence established that, not only had the parties ceased to have sexual relations,

but the husband openly continued to pursue a sexual relationship with another woman. By contrast, here, the evidence established that the parties continued to live together and to carry out the mutual responsibilities of a marital relationship. Indeed, the parties' relationship apparently continued much as it had for the preceding years. Mr. Catalano's insistence that he intended to be separated from Ms. Catalano is insufficient as a matter of law, and is simply belied by the conditions under which the parties lived together until June 2004.

Accordingly, the Defendant's Exceptions to Commissioner's Report are sustained.