COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Athey
Argued at Norfolk, Virginia

PUBLISHED

YORHONDA MILLDRED POOLER, S/K/A
 YORHONDA MILDRED POOLER

v.     Record No. 1786-18-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE GLEN A. HUFF
NOVEMBER 19, 2019

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

Erik A. Mussoni, Assistant Public Defender, for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Following a bench trial, Yorhonda Mildred Pooler ("appellant") was convicted for assault

and battery in violation of Code § 18.2-57 and statutory burglary in violation of Code § 18.2-91.

The trial court sentenced appellant to a term of imprisonment of twelve months for the assault

and battery conviction and three years for the statutory burglary conviction. Appellant now

challenges the sufficiency of the evidence underlying her statutory burglary conviction. Because

the evidence is sufficient to support a statutory burglary conviction, this Court affirms.

I. BACKGROUND

On appeal, this Court "consider[s] the evidence and all reasonable inferences flowing

from that evidence in the light most favorable to the Commonwealth, the prevailing party at

trial." Williams v. Commonwealth, 49 Va. App. 439, 442 (2007) (*en banc*) (quoting Jackson v.

Commonwealth, 267 Va. 666, 672 (2004)). So viewed, the evidence is as follows:

In 2018, Marcus Morris and Jamal Abd Al-Muqit Hasan-Bey lived at a mobile home located in Chesapeake (the "residence"), which Mr. Hasan-Bey owned. In early 2018, Mr. Morris was romantically involved with appellant. Appellant occasionally spent the night with Mr. Morris at the residence. Appellant, however, did not have permission to stay there on nights when Mr. Morris did not. When Mr. Morris was absent from the residence, appellant returned to her home in Norfolk. Appellant kept certain personal items in Mr. Morris' residence, including food, clothing, a toothbrush, and a comb. Appellant also had a key to the residence and assisted in paying utility bills.

Appellant stayed with Mr. Morris in the residence on the evenings of February 19, 20, and 21, 2018. On the evening of February 22, Mr. Morris was at the residence along with his friend L.S. The two were watching television in the front room of the residence. Mr. Morris did not speak to appellant on February 22 and had not invited her to the residence that evening; nor did the two have any plans for her to spend that evening at the residence. Despite this, appellant and an unknown female accomplice went to the residence and kicked in the front door. As appellant entered the room, she yelled at L.S., "Bitch, you in here chilling with my man." The confrontation among the three women devolved to a brawl, during which appellant bit L.S. on her left breast. At Mr. Morris' direction, the three women eventually ceased fighting and exited the residence. Although a verbal altercation continued, each eventually left in their respective vehicles.

Appellant was charged with statutory burglary and malicious wounding and opted for a bench trial. After the Commonwealth presented its case, appellant moved to strike both charges. Appellant argued that the evidence was insufficient to demonstrate malice for the malicious wounding charge and that the evidence was insufficient for the statutory burglary charge because appellant resided with Mr. Morris at the residence. The trial court reduced the malicious

wounding charge to the lesser-included offense of assault and battery. It denied the motion as to the burglary charge, finding that appellant "resided somewhere else" and was allowed at the residence "essentially by his invitation." Appellant presented no evidence and renewed her motion to strike. The trial court again denied the motion, stating that "it does require the breaking, but, you know, opening the door can be a breaking if it's not consented to." The trial court then convicted appellant for statutory burglary and assault and battery. This appeal followed.

## II. STANDARD OF REVIEW

"When a defendant challenges the sufficiency of the evidence, we view the evidence and all reasonable inferences in the light most favorable to the Commonwealth, the prevailing party in the trial court." Rowland v. Commonwealth, 281 Va. 396, 399 (2011). "The judgment of conviction will be reversed only when the ruling is plainly wrong or without evidence to support it." Cordon v. Commonwealth, 280 Va. 691, 694 (2010). Furthermore, this Court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Hamilton v. Commonwealth, 69 Va. App. 176, 195 (2018) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003)). This Court asks only whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.

To the extent the analysis of the sufficiency of the evidence requires this Court to interpret the elements of the offense, such review is conducted *de novo*. See Miller v. Commonwealth, 64 Va. App. 527, 537 (2015).

## III. ANALYSIS

In this case, the Commonwealth was required to establish that appellant committed a breaking and entering of a dwelling of another with intent to commit an assault and battery therein. Code § 18.2-91. Appellant argues that the evidence was insufficient as a matter of law

to support a burglary conviction because she resided at the residence in question. At the outset, the Court notes that whether appellant resided at the residence is potentially relevant to two distinct elements of a burglary charge: (1) whether it was the dwelling "of another;" and (2) whether there was a "breaking."[1] Appellant is not clear as to which element she challenges on appeal. However, because the assignment of error fairly encompasses both, the Court addresses each in turn.

## A. The Dwelling of Another

Burglary is "primarily an offense against the security of [another's] habitation." Turner v. Commonwealth, 33 Va. App. 88, 92 (2000) (quoting Rash v. Commonwealth, 9 Va. App. 22, 26 (1989)) (alteration in original). Accordingly, to prove a burglary charge, the Commonwealth must satisfy the "dual elements" that the breaking and entering occurred not just at a "dwelling house," but that it was the dwelling house "of another." Id.; see also Clarke v. Commonwealth, 66 Va. (25 Gratt.) 908, 916 (1874) (the "definition [of burglary] is, '[a] breaking and entering the mansion house of *another*,' not of one's own house"). Thus, "a person may not unlawfully break and enter a home in which [he or] she has the right to occupy."[2] Justus v. Commonwealth, 274 Va. 143, 155 (2007); see also Clarke, 66 Va. (25 Gratt.) at 916 ("[I]t would be contrary to principle, and the very definition of the offence to say" that a man can "commit burglary by

---

[1] Appellant does not challenge the sufficiency of the evidence that she entered a dwelling with the intent to commit an assault and battery therein.

[2] Courts and litigants have been less than consistent in their use of terminology in burglary cases. In some cases, the analysis focuses on a right to occupy the premises. See, e.g., Justus v. Commonwealth, 274 Va. 143, 155 (2007). In others, this Court has referred to a right of habitation. See, e.g., Turner, 33 Va. App. at 94-95. In older cases, courts often referred to one's "right of entry" upon the property. See, e.g., Clarke, 66 Va. (25 Gratt.) at 916-17. Our sister states have utilized yet other terms. See, e.g., Calhoun v. State, 820 P.2d 819, 821-22 (Okla. Crim. App. 1991) (lawful possession of property). There is no analytical distinction among these terms. This opinion adopts the term "right of occupancy" because it was the most recent terminology utilized by the Supreme Court. See Justus, 274 Va. at 155.

breaking his own house."). A right to occupy arises from a possessory interest in the property. See Turner, 33 Va. App. at 95; see also Knox v. Commonwealth, 225 Va. 504, 507 (1983). Possessory interests, in turn, typically arise from freehold or non-freehold estates.[3] See generally, Restatement (First) of Property § 7; Restatement (Second) of Property § 1.2; cf. Ronald J. Bacigal, Virginia Practice: Criminal Offenses and Defenses 94 (2018-19 ed.) ("The [burglary] indictment must allege ownership in some person other than the defendant. Such ownership may be that of a person who holds any estate, freehold or non-freehold, in the premises."). In certain circumstances, possessory interests may also arise by operation of law because of a special relationship to the property owner.[4]

It is undisputed that appellant had no property interest in the residence; she did not own the residence nor lease any portion of it. Furthermore, while appellant occasionally spent the night with Mr. Morris, she had no legally cognizable special relationship to him. Therefore, she had no possessory interest in the residence and no right to occupy. Accordingly, the evidence is sufficient to demonstrate that the residence was the dwelling "of another."

---

[3] Although possessory interests arise from estates, it does not necessarily follow that every estate holder has a possessory interest and right to occupy. Subsequent actions may divest an estate holder of their right to occupy. For instance, a husband can burglarize his former marital home—even if he retains a joint tenancy in the property—if his wife has a right to exclusive habitation pursuant to a court order. Turner, 33 Va. App. at 95.

[4] As it is unnecessary to the decision in this case, this Court expresses no opinion on the circumstances in which this may arise. This Court, however, recognizes that provisions related to marital property, see Code § 20-107.3, and duties to provide support and maintenance to spouses and children, see Code § 20-61, amongst others, may extend a right to occupy to individuals other than the estate holder. Alternatively, such provisions may restrict an estate holder's ability to retract permission to enter his or her residence for purposes of the breaking element discussed below.

B. The Breaking

"A 'breaking' under burglary law can be 'either actual or constructive.'" Lay v. Commonwealth, 50 Va. App. 330, 334 (2007) (quoting Bao Quac Doan v. Commonwealth, 15 Va. App. 87, 99 (1992)). "Actual breaking requires the use of physical force." Id. (citing Johnson v. Commonwealth, 221 Va. 872, 876 (1981)). "Merely pushing open a door, turning the key, lifting the latch, or resort to other slight physical force is sufficient to constitute this element of the crime." Id. at 334-35 (quoting Johnson, 221 Va. at 876). "On the other hand, constructive breaking can include fraud, threats, trickery, conspiracy, or some other nefarious conduct designed to prompt the victim to let the burglar inside." Id. at 335 (citations omitted); see also Clarke, 66 Va. (25 Gratt.) at 912-15 (discussing the doctrinal underpinnings of a constructive breaking). Regardless, a person does not "break" into a dwelling when they have permission to enter the dwelling and act in accordance with that permission.[5] Snyder v. Commonwealth, 220 Va. 792, 799 (1980); Davis v. Commonwealth, 132 Va. 521, 524 (1922).

---

[5] This Court expresses no opinion on whether a breaking occurs if a person exceeds the scope of their permission to enter or be present in the dwelling—a matter of substantial ambiguity in the jurisprudence of this Commonwealth. Compare Jones v. Commonwealth, 279 Va. 295, 300 (2010) ("[P]ermission or authorization to enter may be negated by the invitee's or guest's intent for purposes of establishing burglary or statutory burglary); Davis v. Commonwealth, 132 Va. 521, 523-24 (1922) (noting in dictum that a person "although fully authorized to enter for purposes within the scope of the employment or trust, actually enters for the purpose of carrying out a previously formed design to commit a felony, he will be guilty of burglary"), and Hitt v. Commonwealth, 43 Va. App. 473 (2004) (holding that the defendant committed a "breaking" when he forced open a locked door to a bedroom even though he had permission to be inside of the residence), with Snyder v. Commonwealth, 220 Va. 792, 798-99 (1980) (holding that the trial court erred in not granting an instruction which mandated the defendant be found innocent of burglary if he entered the dwelling with the permission of the victim regardless of whether he entered with the intent to rape the victim once inside); Johns v. Commonwealth, 10 Va. App. 283, 288 (1990) ("[E]ven where the entry is contrary to the will of the occupier of the premises the requirement that a person 'breaks and enters . . .' is not satisfied by the mere showing that the accused entered . . . with the intent to commit robbery contrary to the will of the occupier of the premises."), and Whitaker v. Commonwealth, No. 2050-97-4 (Va. Ct. App. July 7, 1998) (no breaking occurred where a defendant entered his parents' home intending to commit a larceny because permission to enter the home had not been revoked

There is no dispute that force was utilized when the door to the residence was kicked in. Accordingly, appellant's argument turns on whether she had permission to be at the residence at the time of the incident.[6]

The evidence showed that appellant had her own residence in Norfolk and only spent certain evenings with Mr. Morris at the mobile home. Appellant kept some personal effects at the mobile home and assisted with paying some utility bills. Appellant also had a key to the mobile home. But, both Mr. Morris and Mr. Hasan-Bey testified that she did not reside there. Indeed, she had no permission to be at the mobile home if Mr. Morris was not there. And, she had no blanket permission to be there simply because Mr. Morris was there. In other words, viewing the evidence in the light most favorable to the Commonwealth, and granting it all reasonable inferences arising therefrom, appellant only had permission to be at the mobile home when specifically invited by Mr. Morris. And, Mr. Morris testified that he did not invite appellant to the residence and that there were no plans for her to be at the residence on the day of the incident.

Given these circumstances, a rational trier of fact could have found that appellant did not have permission to be at the mobile home on the day of the incident. Therefore, the evidence was sufficient to demonstrate that appellant committed a "breaking."

---

despite his parents telling him to find another place to live); see also Bacigal, supra, at 89 (discussing this ambiguity and noting that "Snyder purports to rely on, rather than overrule, Davis, but the two are inconsistent").

[6] In arguing that she resided with Mr. Morris, appellant relies heavily on this Court's construction of the term "cohabitant" set forth in Rickman v. Commonwealth, 33 Va. App. 550, 555 (2000). In that case, this Court analyzed whether two individuals were cohabiting for purposes of a domestic violence statute. Factors indicative of cohabitation, a possessory interest in a residence, or permission to enter a residence may overlap in some circumstances. But, the existence of one is not determinative of the others. Therefore, the cohabitation analysis set forth in Rickman is inapposite to the pertinent burglary analyses.

## IV.  CONCLUSION

This Court will not disturb the trial court's factual determination that appellant did not have permission to be at the mobile home the day the burglary occurred.  Nor did appellant have a right to occupy the residence.  Therefore, the evidence is sufficient to uphold her burglary conviction and this Court affirms the ruling of the trial court.

<u>Affirmed.</u>