COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys,* Friedman and White
Argued at Christiansburg, Virginia

**PUBLISHED**

JAQUANTIS DAESHON YELLOCK

v.      Record No. 1936-22-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE FRANK K. FRIEDMAN
JANUARY 30, 2024

FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
G. Carter Greer, Judge

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Sheri H. Kelly, Assistant Attorney General (Jason S. Miyares,
Attorney General; Tanner M. Russo, Assistant Attorney General, on
brief), for appellee.

Following a bench trial, Jaquantis Daeshon Yellock was convicted of domestic assault and battery in violation of Code § 18.2-57.2. Yellock challenges the sufficiency of the evidence on two grounds. First, he contends that the evidence failed to prove that the victim was "a family or household member," as required to sustain a conviction for domestic assault and battery pursuant to Code § 18.2-57.2. Second, he asserts that the evidence failed to establish that he touched the victim with the requisite intent to sustain a conviction for simple assault and battery pursuant to Code § 18.2-57. We agree with the former contention but not the latter; therefore, we reverse Yellock's conviction for domestic assault and battery and remand for further proceedings.

---

* Judge Humphreys participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 2023.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

It is undisputed that Destiny Thomas and her boyfriend, Yellock, were in a heated argument as they sat in her car at a gas station. Specifically, Thomas testified that she and Yellock "got into an altercation." Thomas told Yellock to "get out of [her] car." When Yellock ignored her request, Thomas "beep[ed] [her] horn" to draw attention and to get Yellock away from her. Instead of exiting the vehicle, Yellock "put his hand" on Thomas's head. Thomas "jerked [her] head back" and told Yellock to remove his hand. According to Thomas, Yellock complied and removed his hand, at which point Yellock grabbed Thomas's wallet without permission. He then left the car, dropped the wallet on the pavement, and ran into a nearby grocery store, taking one of Thomas's credit cards with him.

The altercation was sufficiently notable that a concerned bystander called police to report a "domestic" incident. When Officer Harmon arrived at the gas station, "people were pointing at" Yellock, who was running across the parking lot toward a grocery store. Harmon spoke with a "frantic" and "upset" Thomas, and then followed Yellock into the store. Yellock ran from the officer and ignored his command to stop. Eventually, Harmon confronted Yellock in the back of the store and directed him to "come outside and . . . talk." When Yellock refused, Harmon detained him. Harmon found Thomas's credit card in Yellock's possession, arrested him, and returned the

credit card to Thomas. When Harmon "interacted" with Thomas again, he noticed a "red mark" on the "back of her neck."

At trial, Thomas denied that she had any marks on her "related to" Yellock placing his hand on her head. Thomas stated that they were "in a relationship . . . [that] involve[d] touching each other," including "touch[ing] each other's hair." Thomas also testified that they touched each other's hair without expressly obtaining advance permission and that there was nothing "unusual" about Yellock touching her hair "on that day." Nevertheless, she told him to stop because she did not want him to touch her at that time. Thomas testified that Yellock stopped touching her and did not touch her again. Instead, he grabbed her wallet without permission, exited Thomas's vehicle with it, removed a credit card prior to dropping the wallet in the parking lot, and fled into a nearby grocery store.

At the conclusion of the evidence, Yellock moved to strike. First, he asserted that the evidence failed to prove domestic assault and battery because it did not establish that he and Thomas were "cohabitants or . . . family member[s]," as required by Code § 18.2-57.2. Yellock stressed that dating alone did not prove cohabitation. Second, he maintained that the evidence did not prove "harmful or unwanted touching" and, therefore, it was insufficient to sustain a conviction for assault and battery. Yellock argued that he had implicit permission to touch Thomas's hair by virtue of their relationship and that, once she withdrew that permission, he stopped touching her. He noted the absence of any evidence establishing that the red mark on Thomas's neck resulted from his touching her. Yellock argued that the mark could have resulted from Thomas "jerking her head back or . . . by something else altogether."

The trial court found that Yellock committed an "offensive touching." It noted that the couple was "still arguing" when Yellock touched Thomas. In the context of their on-going quarrel, the court found Yellock touched Thomas in a "rude" and "offensive" manner:

Clearly, this was an offensive or rude touching. . . . They had just been arguing. They were still arguing. That's when he reached over and touched her head. . . . We can also infer, and the Court does infer, that the defendant had a consciousness of guilt because he fled the scene. Not only did he flee the scene, but he also left with Ms. Thomas's wallet and one of her bank cards, both of which she ultimately retrieved.

The trial court also made credibility findings; the judge concluded that Thomas attempted to lessen the gravity of the incident at the trial, stating her testimony "tried to minimize [the incident]." The court further discredited Yellock's suggestion that his touching of Thomas was an attempt to calm her: "[t]his was not an intimate instance of trying to make up." The court flatly rejected Yellock's suggestion that he was attempting to de-escalate the altercation by touching Thomas during the argument. Without addressing Yellock's position that the evidence failed to prove a "domestic" assault and battery, the trial court denied the motion to strike and found Yellock guilty of violating Code § 18.2-57.2. Yellock appeals.

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions

- 4 -

reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

A. Domestic Assault and Battery

Yellock challenges his conviction for domestic assault and battery in violation of Code § 18.2-57.2. That statute states in pertinent part that "[a]ny person who commits an assault and battery against a family or household member is guilty of a Class 1 misdemeanor." Code § 18.2-57.2. Code § 18.2-57.2(D) incorporates the definition of "family or household member" as defined in Code § 16.1-228. As relevant to this case, Code § 16.1-228 defines "[f]amily or household member" as "any individual who cohabits or who, within the previous 12 months, cohabited with the person" who was attacked. Yellock maintains that the evidence failed to prove that he and Thomas were family members or cohabited.[1] We agree.

In *Rickman v. Commonwealth*, 33 Va. App. 550, 555 (2000), a case of first impression, this Court determined "[w]hat constitutes cohabiting under Code § 18.2-57.2." The *Rickman* Court observed that "'[c]ohabitation' takes on different meanings in different contexts." *Id.* at 556 (quoting *State v. Yaden*, 692 N.E.2d 1097, 1100 (Ohio Ct. App. 1997)). Further, the Court determined that Virginia, like other states, "has concluded that assault on a family or household member is more serious than assault on a stranger." *Id.* The Court noted that "[o]ur prior consideration of the meaning of the term 'cohabitation' has been limited mainly to the civil arena in the context of divorce and spousal support." *Id.* at 555. *Rickman* found that prior caselaw on the

---

[1] Although Yellock offers a more detailed "cohabitation" argument on appeal than he did below, we conclude that his arguments are preserved. Accordingly, we reject the Commonwealth's assertion that they are procedurally defaulted.

issue in the civil and divorce context was "instructive" but not "control[ling]" in the context of Code § 18.2-57.2.[2]  *Id.* at 556.

*Rickman* made clear that "a totality-of-the-circumstances analysis" applies in determining whether there is cohabitation under Code § 18.2-57.2, and "[t]he factors to be applied 'are unique to each case and how much weight, *if any*, to give to each of these factors must be decided on a case-by-case basis by the trier of fact.'"  *Id.* at 557 (quoting *State v. Williams*, 683 N.E.2d 1126, 1130 (Ohio Ct. App. 1997)).  While adopting a "totality-of-the-circumstances" approach, *Rickman* articulated three primary factors to consider when assessing whether cohabitation has been established: (1) sharing of familial or financial responsibilities, (2) consortium, and (3) length and continuity of the relationship.  *Id.*  In the *Rickman* Court's words: "[P]ossible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets."  *Id.*  "Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations."  *Id.*  The duration and continuity of the relationship is also an appropriate factor for consideration in this analysis.  *Id.*  Relying upon *Rickman*, Yellock contends that, "the three prongs of cohabitation articulated" in that case were not demonstrated by the evidence here.

Looking at the factors enunciated in *Rickman*, and weighing them together, leads to the inescapable conclusion that the Commonwealth failed to establish "cohabitation" between Yellock

---

[2] For instance, in *Schweider v. Schweider*, 243 Va. 245 (1992), the Supreme Court of Virginia found that, "[w]hile engaging in sexual relations is a factor in determining cohabitation, 'matrimonial cohabitation' consists of more than sexual relations.  It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship."  *Id.* at 248 (quoting *Petachenko v. Petachenko*, 232 Va. 296, 299 (1986)).  Similarly, this Court, in *Frey v. Frey*, 14 Va. App. 270, 275 (1992), provided that financial support is "a factor which tends to prove the assumption of duties or obligations attendant to marriage," but "other factors exclusive of support may be sufficient to establish that a relationship is analogous . . . ."  Again, however, analyzing cohabitation in a divorce setting raises related but distinct considerations from weighing cohabitation in the criminal context of Code § 18.2-57.2.

and Thomas within the meaning of Code § 18.2-57.2.  There is no evidence on this record establishing that Yellock and Thomas shared familial or financial resources.  We cannot infer sharing of familial or financial responsibilities solely because Yellock and Thomas were in a relationship that involved touching each other on the date of the incident.[3]  The Commonwealth suggests that the couple was pooling resources by traveling together at the time of the altercation, sharing gas expenses, and that the couple was demonstrating mutual aid, assistance and cooperation by driving together.  Our caselaw reveals that more than this is required to establish familial financial responsibilities.  *See*, *e.g.*, *Rickman*, 33 Va. App. at 558 (considering contributions to household expenses, grocery money, involvement in household chores and services, and counseling girlfriend's children).  Here, there was virtually no evidence that Yellock and Thomas shared food, shelter, clothing, or utilities.  There was also no evidence of comingled assets.  Based on the evidence, this factor does not support a finding of cohabitation.

Additionally, there is little to no evidence of consortium.  The strongest fact for the Commonwealth here is that Yellock and Thomas were in a relationship on the date of the incident and that the relationship involved touching.  *Rickman* does not suggest that simply being in a relationship on the date of an incident is enough to establish consortium or cohabitation generally.  In *Rickman*, the Commonwealth established that the couple slept in the same bed for several months and "had a sexual relationship."  *Id.*  In addition to the couple's sexual relations, the *Rickman* record revealed mutual aid and assistance, cooperation, a "very close" relationship and friendship.  By contrast, there was no evidence of an intimate relationship between Yellock and Thomas beyond touching.  Furthermore, the undeveloped record simply does not demonstrate a relationship involving mutual respect, fidelity, and the type of partnership required

---

[3] "[A]n inference cannot be based upon an inference; a verdict resting upon such foundation is merely the fruit of conjecture, and cannot be sustained."  *Stover v. Norfolk & Western Ry. Co.*, 249 Va. 192, 200 (1995).

under *Rickman*. While the Commonwealth suggests that the couple's ride-sharing and touching evince affection, society, and cooperation, the evidence here relating to the consortium factor does not support a finding of cohabitation.

Finally, the Commonwealth provided very limited evidence on how long Yellock and Thomas had been in a relationship. There was no testimony that they had been a couple for a lengthy or continuous period of time; the evidence was that they were in a relationship on the date of the incident. Thus, the length and continuity factor, similarly, does not support a finding of cohabitation.

In *Rickman*, this Court found that cohabitation was established where the defendant gave the victim grocery money, desired to contribute to household expenses, had a sexual relationship with the victim, and lived with the victim for three months prior to the incident and sporadically for a longer time. *See id.* at 558-59. The present case is easily distinguishable from *Rickman*. Here, the evidence falls well short of establishing cohabitation. None of the "essential elements" listed in *Rickman*—individually or under the required totality of the circumstances analysis— support a finding of cohabitation. Because the Commonwealth failed to prove that Yellock and Thomas cohabited, it did not establish that Thomas was "a family or household member" as required to sustain a conviction for domestic assault and battery pursuant to Code § 18.2-57.2. Accordingly, we reverse Yellock's conviction for domestic assault and battery.

B. Lesser-Included Offense Analysis

While Yellock's conviction for domestic assault and battery cannot be sustained, we still must consider whether simple assault and battery is a lesser-included offense of domestic assault and battery. "[A]n accused cannot be convicted of a crime that has not been charged, unless the crime is a lesser-included offense of the crime charged." *Commonwealth v. Dalton*, 259 Va. 249, 253 (2000). "An offense is not a lesser-included offense of a charged offense unless all its

elements are included in the offense charged. Stated differently, an offense is not a lesser-included offense if it contains an element that the charged offense does not contain." *Id.*[4]

Under Virginia law: "Any person who commits a simple assault or assault and battery is guilty of a Class 1 misdemeanor." Code § 18.2-57. "Any person who commits an assault and battery against a family or household member is guilty of a Class 1 misdemeanor." Code § 18.2-57.2. Simple assault and battery includes the same elements that domestic assault and battery require, with the exception that the latter offense also requires a finding that the assault and battery was against "a family or household member." *Id.* Put another way, simple assault and battery requires no additional or different element than is required for a conviction for domestic assault and battery. Because simple assault and battery does not contain an element that the charged offense does not contain, simple assault and battery is a lesser-included offense of domestic assault and battery. *See Forness v. Commonwealth*, __ Va. __, __ (Jan. 19, 2023) (providing "[a] crime is a lesser included offense of another crime when all of the elements of the lesser crime are subsumed by the greater crime").

C. Simple Assault and Battery Analysis

Yellock contends that the evidence was insufficient to prove simple assault and battery because the Commonwealth failed to establish that he touched Thomas with the requisite intent to sustain such a conviction. Yellock argues that he touched Thomas in the past with her consent and that, in this instance, he stopped touching her once she jerked away and told him to stop. Yellock further asserts that the facts suggest that his touching of Thomas was innocent and

---

[4] "[I]f it is possible to commit each of the offenses without also committing the other, then the two offenses are different." *Dezfuli v. Commonwealth*, 58 Va. App. 1, 8 (2011); *see Morris v. Commonwealth*, 45 Va. App. 181, 189 (2005) (finding that brandishing is not a lesser-included offense of robbery). When analyzing whether each offense requires proof of a fact which the other does not, "we examine the offenses in the abstract, rather than with reference to the facts of the particular case under review." *Bowden v. Commonwealth*, 52 Va. App. 673, 676 (2008) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

affectionate.  While Yellock was free to make these arguments to the trial court, the factfinder flatly rejected the inferences he now seeks to draw on appeal.

"Assault and battery are common law crimes."  *Montague v. Commonwealth*, 278 Va. 532, 541 (2009).  "[B]ecause the elements of assault are not statutorily defined, [courts] must apply the common law definition."  *Clark v. Commonwealth*, 279 Va. 636, 641 (2010).  "To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another."  *Parish v. Commonwealth*, 56 Va. App. 324, 330 (2010) (alteration in original) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404 (1927)).  "Whether a touching is a battery, depends on the intent of the actor, not the force applied."  *Id.* (quoting *Adams v. Commonwealth*, 33 Va. App. 463, 469 (2000)).  "Whether the required intent exists is 'a question of fact for the trier of fact.'"  *Cornell v. Commonwealth*, 76 Va. App. 17, 29 (2022).

A willful act is one that is "[v]oluntary and intentional, but not necessarily malicious."  *Willful*, *Black's Law Dictionary* (11th ed. 2019).  "The law is clear that '[t]he slightest touching of another . . . if done in a rude, insolent, or angry manner, constitutes a battery for which the law affords redress.'"  *Kelley v. Commonwealth*, 69 Va. App. 617, 628 (2019) (alterations in original) (quoting *Adams*, 33 Va. App. at 463).  "In such circumstances, '[t]he unlawful intent may be imputed.'"  *Id.* (alteration in original) (quoting *Parish*, 56 Va. App. at 331).  "Similarly, a touching . . . falls outside the realm of normal human interaction when it is done 'with the intent to place [the victim] in fear or apprehension of bodily harm.'"  *Parish*, 56 Va. App. at 331 (second alteration in original) (quoting *Clark*, 279 Va. at 642).  "Words and prior conduct are highly relevant in shedding light on intent and the context within which certain actions transpired.  A perpetrator's intent may be inferred from the nature of the overt act and the surrounding circumstances."  *Clark*, 279 Va. at 642.

Here, there was sufficient evidence to convict Yellock of simple assault and battery. The trial court was not plainly wrong or without evidentiary support to find that Yellock willfully touched Thomas in a "rude, insolent, or angry manner." *See Kelley*, 69 Va. App. at 628. It is undisputed that, when the touching occurred, Yellock and Thomas were in a heated altercation that was significant enough that a bystander called 911. During the altercation, Thomas honked her car horn in an attempt to get Yellock away from her, which did not work. Yellock put his hand on Thomas during this quarrel, at which point she "jerked [her] head back." Yellock followed the unwanted touching by grabbing Thomas's wallet without her permission, fleeing the scene, and dropping the wallet on the pavement while keeping one of Thomas's credit cards. Upon arriving at the scene, Officer Harman described Thomas as "frantic" and "upset." The surrounding circumstances support the factfinder's conclusions.[5]

Based on this evidence, we cannot say that there was insufficient evidence, as a matter of law, for the trial court to find that Yellock willfully touched Thomas in a rude, angry, or offensive manner. Accordingly, for the foregoing reasons, we find that the record supports a conviction for assault and battery.

Here, Yellock was not charged with or convicted of the lesser-included offense of simple assault and battery below—and the focus on the lesser-included offense has occurred in the

---

[5] The trial judge, as factfinder, was required to weigh the credibility of the witnesses. Moreover, a fact finder is not required to believe all aspects of a witness's testimony; it may accept some parts as believable and reject other parts as implausible. *See Rickman*, 33 Va. App. at 554; *see also Kelley*, 69 Va. App. at 626 (providing fact finder has sole responsibility to determine witness credibility as well as the weight to be given their testimony). Here, the trial court specifically found that Thomas "tried to minimize [the incident]" based on her suggestion that there was nothing "unusual" about it. The trial court's credibility determination on this point was supported by the evidence; the fact that Officer Harmon found Thomas to be "frantic" and "upset" at the scene and that a bystander called 911 supports the conclusion that this was not a run-of-the-mill dispute. Similarly, the trial court found that this was not an instance of an innocent or affectionate touching as Yellock asserted. His actions in grabbing Thomas's wallet and fleeing with her credit card support the factfinder's conclusion that the "touching" was not made in a conciliatory manner.

appellate court. Nor has Yellock consented to be re-sentenced for assault and battery on remand. Under these circumstances, we are constrained to remand the matter for a new trial on the lesser-included offense of simple assault and battery if the Commonwealth be so advised. *See Britt v. Commonwealth*, 276 Va. 569, 576 (2008) (remanding for a new trial, where there was sufficient evidence on the lesser-included offense, but "both parties ha[d] not consented to that relief"); *see also Frango v. Commonwealth*, 66 Va. App. 34, 46 (2016).[6] Under *Britt*, where the defendant's conviction for the charged offense is overturned on appeal, but the appellate court finds there is sufficient evidence to prove a lesser-included offense, the prescribed remedy is a remand for a new trial on the lesser-included offense unless both parties consent to a remand for re-sentencing on the lesser offense. 276 Va. at 576-77.[7] Again, no such consent was given here.

## CONCLUSION

For the foregoing reasons, we reverse Yellock's conviction for domestic assault and battery and remand for further proceedings. The Commonwealth failed to establish that Thomas

---

[6] In a post-*Britt* decision, this Court, stated:

> We recognize that subsequent to *Britt*, our Supreme Court reversed a conviction and remanded the case for a new sentencing hearing on a lesser-included offense because "this disposition is consistent with Code § 19.2-185 . . . ." While *Waller* did not address whether the parties consented to the re-sentencing, neither did it overrule the holding in *Britt*. Thus, we believe that the consent of the parties continues to be a prerequisite to our remanding a case for re-sentencing on a lesser-included offense.

*Hunter v. Commonwealth*, 56 Va. App. 50, 66 n.7 (2010) (quoting *Waller v. Commonwealth*, 278 Va. 731, 738 (2009)); *see also Frango*, 66 Va. App. at 46 (after overturning a conviction for petit larceny of timber, "the logical result would be for us to remand to the trial court for sentencing on petit larceny. . . . Appellant has not consented to such a result, and therefore . . . *Britt* precludes such a resolution.").

[7] *Britt* makes clear that if the parties do consent in these circumstances, a remand limited to re-sentencing on the lesser-included offense is appropriate. *See Preston v. Commonwealth*, 281 Va. 52, 59 n.5 (2011) (remanding for new sentencing hearing on lesser-included offense because defendant requested such relief).

was "a family or household member" as required under Code § 18.2-57.2. Nonetheless, the evidence was sufficient to support a conviction on the lesser-included offense of simple assault and battery. Therefore, we remand the matter to the trial court for a new trial on the lesser-included offense of simple assault and battery if the Commonwealth be so advised.

*Reversed and remanded.*